STATE OF NORTH CAROLINA v. DAVID LAWRENCE LAMSON

No. 8419SC917

(Filed 4 June 1985)

1. **Burglary and Unlawful Breakings § 6.2— first-degree burglary—inference of felonious intent—evidence insufficient**

   There was insufficient evidence to support defendant's conviction for first-degree burglary where defendant's indictment alleged that defendant broke and entered a dwelling house at nighttime with intent to commit larceny, there was nothing in the evidence to support a finding that defendant entered the house with intent to commit larceny, and there was evidence of other intent or explanatory facts and circumstances to preclude an inference of felonious intent from evidence that defendant was breaking into the house and fled when deputies arrived.

2. **Burglary and Unlawful Breakings § 6.2— first-degree burglary—mistake of fact—instruction required**

   The trial judge erred in a prosecution for first-degree burglary by not instructing the jury on the defense of mistake of fact where the evidence showed that defendant had previously visited a friend at the house next door to the house where he was arrested, it was nighttime, and the two houses were similar in appearance.

APPEAL by defendant from *Mills, Judge.* Judgment entered 22 May 1984 in Superior Court, CABARRUS County. Heard in the Court of Appeals 14 March 1985.

Defendant was charged in a true bill of indictment with first degree burglary. He was found guilty and sentenced to eighteen years imprisonment.

At trial the State presented the following evidence. Joanne Christie testified that she lived at 101 Woodland Drive in Concord. The night of 7 April 1984 Christie's husband was at work, and she was at home with her mother and niece. Christie went to bed at 10:30 p.m. and was awakened by a scraping noise. She saw that her bedroom window, which opened onto the front porch, was open, and a man was standing outside her window. Christie was sure that she had closed the window when she went to bed. Christie asked defendant what he was doing, he jumped back, and she shut the window. Christie ran to the kitchen and called the Sheriff's Department and her husband. When she was in the kitchen she heard the back door shaking, as if someone was pulling the doorknob back and forth.

Deputy Sheriff Tommy Fisher testified that when he arrived at Christie's residence he saw defendant standing on the steps leading to the back door. Defendant started walking down the steps and then ran. Three hours later Fisher found defendant about a mile away and arrested him. According to Fisher, defendant had been drinking, but was not drunk. Behind Christie's garage Deputy Sheriff J. A. Cook found a brown canvas suitcase and a pile of clothing. There were eight letters addressed to defendant in the suitcase. No burglary tools were found in the suitcase or in defendant's possession.

Defendant presented the following evidence. John Nunn testified that he lived at 103 Woodland Drive, next door to the Christie residence. Jeff Henley, a friend of defendant's, was staying with Nunn, and defendant had visited him at Nunn's house several times.

Defendant did not testify.

The jury found defendant guilty of first degree burglary.

At the sentencing hearing defendant said he had no intent to break into Christie's home, he had mistaken her house for the Nunn's house and was trying to wake somebody up to see when Jeff Henley would be back to give him a ride to Charlotte.

The trial judge found one aggravating factor, that defendant had a prior conviction punishable by more than 60 days confinement, and no mitigating factors. Defendant received a sentence of eighteen years.

*Attorney General Edmisten by Assistant Attorney General Guy A. Hamlin for the State.*

*Appellate Defender Adam Stein by Assistant Appellate Defender Robin E. Hudson for defendant-appellant.*

PARKER, Judge.

[1] The sole issue presented is whether there was sufficient evidence to support defendant's conviction for first degree burglary.

To support a conviction there must be substantial evidence of each essential element of the offense charged. *State v. Powell,*

299 N.C. 95, 261 S.E. 2d 114 (1980). Substantial evidence is the amount of relevant evidence that would convince a rational trier of fact. *State v. Corbett*, 307 N.C. 169, 297 S.E. 2d 553 (1982). To support a conviction of first degree burglary there must be substantial evidence that defendant broke and entered a dwelling house at nighttime, with intent to commit a felony therein. *State v. Wells*, 290 N.C. 485, 226 S.E. 2d 325 (1976). The intended felony alleged in defendant's indictment was larceny, thus the State must have presented evidence sufficient for the jury to find that, at the time defendant entered the residence, he intended to take and carry away the personal property of another without consent and with the intent to permanently deprive the owner of that property. *See* G.S. 14-72.

The State relies on *State v. McBryde*, 97 N.C. 393, 1 S.E. 925 (1887), for the proposition that intent to commit larceny can be inferred from the evidence presented at trial that defendant was breaking into the house and fled when the Deputy Sheriffs arrived.

In *McBryde*, the defendant entered a bedroom at 2:00 a.m. where two women were sleeping. One woman awoke and screamed, and the defendant fled. The defendant was found guilty of burglary with felonious intent to commit larceny. In affirming the trial court, our Supreme Court observed:

> The intelligent mind will take cognizance of the fact, that people do not usually enter the dwellings of others in the night time, when the inmates are asleep, with innocent intent. The most usual intent is to steal, and when there is no explanation or evidence of a different intent, the ordinary mind will infer this also. The fact of the entry alone, in the night time, accompanied by flight when discovered, is some evidence of guilt, and in the absence of any other proof, or evidence of other intent, and with no explanatory facts or circumstances, may warrant a reasonable inference of guilty intent.

*State v. McBryde*, 97 N.C. at 396-7, 1 S.E. at 927.

This inference has been relied on in numerous cases. *See, e.g., State v. Simpson*, 303 N.C. 439, 279 S.E. 2d 542 (1981); *State v. Sweezy*, 291 N.C. 366, 230 S.E. 2d 524 (1976); *State v. Hedrick*, 289 N.C. 232, 221 S.E. 2d 350 (1976).

This inference has, however, been held not to apply in two recent decisions by this court: *State v. Hankins*, 64 N.C. App. 324, 307 S.E. 2d 440 (1983), *affirmed per curiam* 310 N.C. 622, 313 S.E. 2d 579 (1984) and *State v. Moore*, 62 N.C. App. 431, 303 S.E. 2d 230 (1983). In *Hankins*, defendant pushed the front door open and entered the house. He said to one of the occupants, "This is no joke. I have got a knife. Get up against the wall." A man came out of his bedroom and began struggling with the defendant. Defendant fled. The court submitted first degree burglary to the jury with the underlying felonious intention of either rape or larceny. This court held that under *State v. Rushing*, 61 N.C. App. 62, 300 S.E. 2d 445, *affirmed per curiam* 308 N.C. 804, 303 S.E. 2d 822 (1983), there was not sufficient evidence that the defendant intended to commit rape at the time he entered the house, and the manner in which he entered the house did not give rise to the inference that he intended to commit larceny.

In *Moore*, an occupant of the house found defendant in an upstairs bedroom. Defendant was not carrying a weapon and was drunk. Defendant testified that a man threatened him with a knife and told him to go into the house. Defendant climbed the stairs believing the man holding the knife was behind him, opened the door and walked into the house. When he heard someone in the house, he hid behind a bedroom door. This court held that the evidence did not give rise to the *McBryde* inference of intent to steal because there was evidence to support an inference that defendant was coerced to enter the house.

In the instant case we find that there was evidence of other intent or explanatory facts and circumstances to preclude application of the *McBryde* inference of felonious intent. We find nothing in the evidence which supports a finding that defendant entered Christie's house with intent to commit larceny. Consequently, the first degree burglary charge against defendant must be dismissed. But for the error in the jury instructions discussed below, we would remand this case for resentencing on the lesser included offense of misdemeanor breaking or entering.

[2] We find, however, that the trial judge erred in failing to instruct the jury on the defense of mistake of fact, and we must award defendant a new trial on the charge of misdemeanor breaking or entering.

Ordinarily, a crime consists in the concurrence of prohibited conduct and culpable mental state. 1 Wharton's Criminal Law § 27 (14th ed. 1978). A crime is not committed if the mind of the person doing the act is innocent. *State v. Welch,* 232 N.C. 77, 59 S.E. 2d 199 (1950). If there is evidence from which an inference can be drawn that the defendant committed the act without a criminal intent, then the law with respect to intent should be explained and applied by the court to the evidence. *State v. Walker,* 35 N.C. App. 182, 241 S.E. 2d 89 (1978). In *Walker,* the defendant, who was charged with abducting a child, testified that when he took the child from the school bus he believed she was his granddaughter, and as soon as he discovered his mistake he returned her to the school. This court held that the evidence permitted the inference that the defendant was laboring under a mistake as to the identity of the little girl which could negate any criminal intent, and the trial judge erred in failing to instruct the jury on the defense of mistake of fact.

Similarly, in the instant case there was some evidence permitting the inference that defendant was acting under a mistake of fact. John Nunn testified that he lived at 103 Woodland Drive, next door to Christie, and that Jeff Henley, a friend of defendant's, was staying with him. Defendant had previously visited Henley several times at Nunn's house. Thus defendant had a reason to be at Nunn's house. Additionally, the evidence showed that Christie's house and Nunn's house were similar in appearance. Christie's house was brick, Nunn's house was imitation brick. Both houses had attached white garages, front porches with gables and roof peaks running north and south. Photographs of both houses were introduced into evidence for illustrative purposes. The obvious objective of the introduction of this evidence was to show mistake. This evidence, coupled with the fact that it was nighttime, is, in our view, sufficient to raise an inference of mistake of fact, and on retrial for misdemeanor breaking or entering the trial judge should instruct the jury on this defense.

New trial.

Judges WEBB and BECTON concur.