STATE OF NORTH CAROLINA v. ERIC L. KORNEGAY

No. COA01-585

(Filed 19 March 2002)

**1. Confessions and Incriminating Statements— free to leave test—formal arrest test—defendant not in custody**

The trial court did not err in a first-degree murder and armed robbery case by failing to suppress statements that were obtained before defendant received Miranda warnings because although

STATE v. KORNEGAY

[149 N.C. App. 390 (2002)]

the trial court applied the less restrictive "free to leave" test to conclude that defendant's statements should not be suppressed, instead of the newly articulated "formal arrest" test, it follows that an application of the more restrictive "formal arrest" test would yield the same conclusion that defendant was not in custody for purposes of Miranda.

**2. Homicide— first-degree murder—voluntary intoxication**

The trial court did not err in a first-degree murder case by failing to instruct on voluntary intoxication, because: (1) while defendant may have consumed controlled substances prior to the murder, there is no evidence to suggest that he was intoxicated at the time he committed the murder; (2) defendant remembered specific details surrounding the murder including the clothes he was wearing and the conversation he had with the victim prior to the murder; and (3) defendant disposed of the murder weapon and the bags of stolen property after leaving the store, indicating a capacity to form premeditation and deliberation.

**3. Homicide— first-degree murder—failure to instruct on lesser-included offense of second-degree murder**

The trial court did not err in a first-degree murder case by failing to instruct on the lesser-included offense of second-degree murder, because the State's evidence tended to show that defendant killed the victim with premeditation and deliberation.

**4. Criminal Law— jury instructions—flight**

The trial court did not commit plain error in a first-degree murder and armed robbery case by its instructions to the jury on flight, because: (1) the evidence revealed that defendant fled the scene after committing the crimes charged; and (2) upon leaving the store, defendant discarded the murder weapon and the bags of stolen items.

**5. Homicide— first-degree murder—short-form indictment**

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree murder based on the use of a short-form indictment, because the indictment is constitutional.

Appeal by defendant from judgment entered 31 August 2000 by Judge Paul L. Jones in Lenoir County Superior Court. Heard in the Court of Appeals 13 February 2002.

*Attorney General Roy A. Cooper, by Special Deputy Attorney General Robert J. Blum, for the State.*

*Russell J. Hollers, III, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Eric L. Kornegay ("defendant") appeals his convictions of first-degree murder and armed robbery.

The evidence at trial tended to show the following: Byong Kook Min ("Min") was the owner and operator of Lexton's, a store located in downtown Kinston, North Carolina. On 28 August 1998, law enforcement officers discovered Min's body lying on the floor of his store.

On or around the time of the murder, defendant was seen in downtown Kinston. On 3 September 1999, six days after Min's murder, law enforcement agents of the Kinston Police Department attached a recording device on Clifton Edwards ("Edwards") and sent him to speak with defendant. Defendant was heard describing to Edwards how he shot Min and the items he stole from the store. Later that day, Officer Jackie Rogers and Detective Ken Barnes of the Kinston police department located defendant at his home. Defendant agreed to accompany the officers to the police station for questioning.

At the police station, defendant was not handcuffed nor restrained in any manner. After repeated denials of his involvement in the crimes, defendant confessed to Captain Randy Askew ("Captain Askew") that he committed the robbery and murder. In his confession, defendant admitted riding downtown on his moped with a .22 rifle revolver in his pocket. Once inside Lexton's, defendant looked at clothing, jewelry and tried on a pair of shoes. At one point, Min turned around and defendant pulled out his revolver and pointed it at Min's head. However, defendant confessed, he became scared and put the revolver back in his pocket. When Min turned around the second time, defendant fired a gunshot to the back of Min's head. After the shooting, defendant stated that he stole five (5) twenty-dollar bills, three (3) ten-dollar bills and six (6) one-dollar bills. He also filled four bags with clothing and one bag with jewelry.

Captain Askew reduced defendant's confession to writing. Defendant subsequently read and signed the statement. Shortly after giving the statement to Captain Askew, Special Agent Forrest

Kennedy of the State Bureau of Investigation, read defendant his *Miranda* rights, at which point defendant gave another statement confessing to the crimes.

After confessing to the crimes, defendant rode with the police to his home where they recovered a .22 caliber revolver. While at defendant's home, defendant's mother asked him if he in fact, "shot that man." She asked the question twice and defendant responded that he shot Min. At trial, the recorded conversation between defendant and Clifton was played in court for the jury. Defendant was subsequently found guilty of first-degree murder and armed robbery and was sentenced to life imprisonment without parole. Defendant appeals.

---

**[1]** In his first assignment of error, defendant contends that the trial court erroneously failed to suppress statements that were obtained in violation of his constitutional rights. For the following reasons stated herein, we disagree.

" 'The scope of review on appeal of the denial of a defendant's motion to suppress is strictly limited to determining whether the trial court's findings of fact are supported by competent evidence, in which case they are binding on appeal, and in turn, whether those findings support the trial court's conclusions of law.' " *State v. Cabe*, 136 N.C. App. 510, 512, 524 S.E.2d 828, 830 (quoting *State v. Corpening*, 109 N.C. App. 586, 587-88, 427 S.E.2d 892, 893 (1993)), *disc. review denied*, 351 N.C. 475, 543 S.E.2d 496 (2000). We note that defendant does not except to any of the trial court's findings of fact. This Court's review is therefore, "limited to whether the trial court's findings of fact support its conclusions of law." *State v. Cheek*, 351 N.C. 48, 63, 520 S.E.2d 545, 554 (1999), *cert. denied*, 530 U.S. 1245, 147 L. Ed. 2d 965 (2000). "While the trial court's factual findings are binding if sustained by the evidence, the court's conclusions based thereon are reviewable *de novo* on appeal." *State v. Parker*, 137 N.C. App. 590, 594, 530 S.E.2d 297, 300 (2000).

Defendant argues that the trial court articulated the wrong test for determining whether he was "in custody" for purposes of *Miranda* in light of the recent Supreme Court decision, *State v. Buchanan*, 353 N.C. 332, 543 S.E.2d 823 (2001).

In *State v. Buchanan*, our Supreme Court redefined the test that a trial court must employ in determining whether a person is "in cus-

tody" for purposes of *Miranda.* In *Buchanan,* defendant made two statements to law enforcement officers before he was arrested, charged and afforded his *Miranda* rights. *Id.* at 335, 543 S.E.2d at 825. In suppressing the defendant's statements, the trial court found that defendant was in custody before he was afforded his *Miranda* rights and thus his statements were not admissible. The State appealed, contending that the trial court applied an "incomplete test" in determining that defendant was in custody. *Id.* at 335, 543 S.E.2d at 826. The State argued that the trial court erred in applying the test of whether a reasonable person in defendant's position would have felt "free to leave," rather than utilizing a test which inquires whether a "reasonable person would have perceived that there was a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id.* at 336, 543 S.E.2d at 826. Therefore, the State argued, the trial court erred in granting defendant's motion to suppress. *Id.*

In summarizing the law regarding the application of *Miranda* in custodial interrogations, the Supreme Court in *Buchanan* "disavowed" the long-standing "free to leave" test for determining whether a defendant is in custody. *Id.* at 340, 543 S.E.2d at 828. Instead, the Supreme Court articulated that the " 'ultimate inquiry,' " based on the totality of circumstances, is whether there was a " 'formal arrest or restraint of freedom of movement of the degree associated with a formal arrest.' " *Id.* at 338, 543 S.E.2d at 827 (quoting *California v. Beheler,* 463 U.S. 1121, 1125, 77 L. Ed. 2d 1275, 1279 (1983); *see also Thompson v. Keohane,* 516 U.S. 99, 112, 133 L. Ed. 2d 383, 394 (1995)); *Stansbury v. California,* 511 U.S. 318, 322, 128 L. Ed. 2d 293, 298 (1994) (holding that the "ultimate inquiry" in determining whether a person is in custody for purposes of *Miranda* is whether there was a "formal arrest or restraint on freedom of movement associated with a formal arrest"). The Court stated that unlike the "free to leave" test, which has consistently been applied for determining whether a person has been seized for Fourth and Fourteenth Amendment purposes, the "formal arrest" test applies to "Fifth Amendment custodial inquiries and requires circumstances which go beyond those supporting a finding of temporary seizure and create an objectively reasonable belief that one is actually or ostensibly "in custody." *Id.* at 339, 543 S.E.2d at 828.

Accordingly, the Supreme Court concluded that the trial court's application of the broader "free to leave" test was error and thus the Court remanded the matter to the trial court for a determination of

whether the statement should be suppressed under the narrower "formal arrest" test. *Id.* at 339, 543 S.E.2d at 828.

In the instant case, the trial court, in denying defendant's motion to suppress, applied the "free to leave" test and determined that defendant was not in custody when he confessed to the crimes charged. As announced by our Supreme Court in *Buchanan*, the "free to leave" test is less restrictive than the newly articulated "formal arrest test." Since the trial court determined that under the less restrictive "free to leave" test that defendant's statement should not be suppressed, it follows that an application of the more restrictive "formal arrest" test would yield the same conclusion, that, "defendant was not in custody" for purposes of *Miranda*. Thus, we hold that any error in the trial court's application of the "free to leave" test did not prejudice defendant. This assignment of error is overruled.

[2] In his second assignment of error, defendant contends that the trial court erred in failing to instruct the jury on voluntary intoxication and second-degree murder. We disagree.

It is "well established that an instruction on voluntary intoxication is not required in every case in which a defendant claims that he killed a person after consuming intoxicating beverages or controlled substances." *State v. Baldwin*, 330 N.C. 446, 462, 412 S.E.2d 31, 41 (1992). Evidence of mere intoxication is not enough to meet defendant's burden of production. *State v. Mash*, 323 N.C. 339, 346, 372 S.E.2d 532, 536 (1988). Before the trial court will be required to instruct on voluntary intoxication, defendant must produce substantial evidence which would support a conclusion by the trial court that at the time of the crime for which he is being tried " 'defendant's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming a deliberate and premeditated purpose to kill. In absence of some evidence of intoxication to such degree, the court is not required to charge the jury thereon.' " *State v. Strickland*, 321 N.C. 31, 41, 361 S.E.2d 882, 888 (1987) (quoting *State v. Medley*, 295 N.C. 75, 79, 243 S.E.2d 374, 377 (1978)).

In support of an instruction of voluntary intoxication, defendant attempts to rely on his statement given to Captain Askew wherein he stated that he was "drunk and high from smoking [cocaine]" and that he was "coming down" from the night before. While he may have consumed these controlled substances prior to the murder, there is no evidence to suggest that he was intoxicated at the time he committed the murder. In fact, in his statement given to Captain Askew, defend-

ant remembered specific details surrounding the murder including the clothes he was wearing and the conversation he had with Min prior to the murder. After leaving the store, defendant disposed of the murder weapon and the bags of stolen property. Such behavior is clearly indicative of a capacity to form premeditation and deliberation. Under the facts of this case, we cannot conclude that defendant produced sufficient evidence from which a jury could find that defendant was so intoxicated that he was "utterly incapable" of forming the specific intent to commit first-degree murder.

[3] Defendant further argues that the trial court erred in failing to instruct the jury on second-degree murder. We disagree.

First-degree murder is defined as "the intentional and unlawful killing of a human being with malice and with premeditation and deliberation." *State v. Flowers*, 347 N.C. 1, 29, 489 S.E.2d 391, 407 (1997), *cert. denied*, 522 U.S. 1135, 140 L. Ed. 2d 150 (1998). Second-degree murder is defined as "the unlawful killing of a human being with malice, but without premeditation and deliberation." *Id.* "A defendant is entitled to have a lesser-included offense submitted to the jury only when there is evidence to support that lesser-included offense." *Id.* Our Supreme Court has stated that the test for determining whether an instruction on second-degree murder is required is as follows:

> "The determinative factor is what the State's evidence tends to prove. If the evidence is sufficient to fully satisfy the State's burden of proving each and every element of the offense of murder in the first degree, including premeditation and deliberation, and there is no evidence to negate these elements other than defendant's denial that he committed the offense, the trial judge should properly exclude from jury consideration the possibility of a conviction of second degree murder."

*State v. Gary*, 348 N.C. 510, 524, 501 S.E.2d 57, 66-67 (1998) (quoting *State v. Strickland*, 307 N.C. 274, 293, 298 S.E.2d 645, 658 (1983), *overruled in part on other grounds*, 317 N.C. 193, 344 S.E.2d 775 (1986)).

The State's evidence tended to show that defendant killed Min with premeditation and deliberation. Defendant went to Lexton's with a gun. At one point, Min turned around and defendant pointed a gun at his head; however, defendant did not fire a shot. When Min turned around the second time, defendant shot Min in the back of the head.

After killing Min, defendant proceeded to steal items from the store including cash, clothing, and jewelry. The evidence is clearly sufficient to establish every element of the offense of first-degree murder. Thus, the trial court was not required to instruct the jury on second-degree murder. This assignment of error is therefore overruled.

[4] By his next assignment of error, defendant contends that the trial court erred in its instructions to the jury on flight. At trial, defendant did not object to the instruction given by the trial court. Having failed to object at trial, defendant now assigns plain error to the trial court's instruction to the jury.

To find plain error, the error in the trial court's jury instruction must be " 'so fundamental as to amount to a miscarriage of justice' " in that a different verdict probably would have been reached by the jury. *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993) (quoting *State v. Bagley*, 321 N.C. 201, 213, 262 S.E.2d 244, 251 (1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988)). "Only in a 'rare case' will an improper instruction 'justify reversal of a criminal conviction when no objection has been made in the trial court.' " *State v. Weathers*, 339 N.C. 441, 454, 451 S.E.2d 266, 272 (1994) (quoting *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378 (1983)).

A flight instruction is appropriate where "there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime[.]" *State v. Irick*, 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977). "The relevant inquiry concerns whether there is evidence that defendant left the scene of the murder and took steps to avoid apprehension." *State v. Levan*, 326 N.C. 155, 165, 388 S.E.2d 429, 434 (1990).

In the present case, the evidence revealed that defendant fled the scene after committing the crimes charged. Upon leaving the store, defendant discarded the murder weapon and the bags of stolen items. We hold the evidence sufficient for an instruction on flight. This assignment of error is overruled.

[5] In his last assignment of error, defendant contends that the trial court erred in denying his motion to dismiss based on the State's use of the short-form indictment. This argument is without merit.

The indictment in the present case charged that defendant "unlawfully, willfully and feloniously did of malice aforethought kill and murder Byon Kook Min" in violation of N.C. Gen. Stat. § 14-17. Defendant's arguments were expressly rejected in *State v. Wallace*,

351 N.C. 481, 504-08, 528 S.E.2d 326, 341-43 (holding that indictments based upon N.C. Gen. Stat. § 15-144 are in compliance with both the North Carolina and United States Constitution), *cert. denied,* 531 U.S. 1018, 148 L. Ed. 2d 498 (2000), *reh'g denied,* 531 U.S. 1120, 148 L. Ed. 2d 784 (2001); and *State v. Braxton,* 352 N.C. 158, 173-75, 531 S.E.2d 428, 436-38 (2000) (holding that "premeditation and deliberation need not be separately alleged in the short-form indictment"), *cert. denied,* 531 U.S. 1130, 148 L. Ed. 2d 797 (2001). In light of the recent decisions of the Supreme Court, we overrule this assignment of error.

No error.

Judges WYNN and TYSON concur.