STATE OF NORTH CAROLINA v. LEONARD KEITT, Defendant

No. COA01-943

(Filed 5 November 2002)

**1. Burglary and Unlawful Breaking or Entering— inference of intent—intoxication**

The trial court did not err by denying a motion to dismiss a first-degree burglary charge for insufficient evidence where defendant fell within the scope of the McBryde inference of intent to commit larceny in that he entered the dwelling place of another at night, attempted to stop the victim from screaming, and tried to flee. Defendant did not rebut the presumption of intent with evidence of intoxication, given his behavior inside the house.

**2. Appeal and Error— preservation of issues—instruction denied**

A first-degree burglary defendant preserved for appeal the failure of the court to instruct on voluntary intoxication where defendant did not formally object at trial, but requested an instruction on misdemeanor breaking and entering based upon defendant's intoxication. No formal objection is required if a party submits a request to alter an instruction during the charge conference and the trial judge considers and refuses the request.

**3. Criminal Law— defenses—voluntary intoxication—evidence sufficient**

The trial court erred by not giving an instruction on voluntary intoxication where defendant was so intoxicated on the night of the break-in that he was barely able to stand; the victim smelled alcohol on him; defendant had trouble leaving her home, fumbling at the door; and the arresting officer smelled alcohol on him the next morning. The central issue was intent, and there was a reasonable possibility of a different result if the instruction had been given.

Judge GREENE dissenting.

STATE v. KEITT

[153 N.C. App. 671 (2002)]

Appeal by defendant from judgment entered 1 March 2001 by Judge Melzer A. Morgan in Montgomery County Superior Court. Heard in the Court of Appeals 4 June 2002.

*Attorney General Roy Cooper, by Special Deputy Attorney General Thomas J. Ziko, for the State.*

*Russell J. Hollers, III, for the defendant-appellant.*

HUDSON, Judge.

Defendant was convicted of first-degree burglary in Montgomery County Superior Court on 28 February 2001 and sentenced to a term of imprisonment for a minimum of 103 months and a maximum of 133 months. Defendant appeals his conviction, arguing: (1) the trial court erred in denying his motion to dismiss as there was no evidence that he intended to commit larceny; (2) the court should have intervened to prevent improper argument and conduct by the prosecution; (3) the court erred in allowing the testimony of Officer Jamie Hunsucker; and (4) the court improperly failed to instruct the jury on the issue of voluntary intoxication. We agree that the trial court erred in not instructing the jury on voluntary intoxication and remand for a new trial.

The evidence presented at trial tended to show the following: on 1 September 2000, at about 2:00 a.m., Ms. Phyllis Scott awoke and saw a man standing near the foot of her bed. When she began to scream, he ran towards her and put his hand over her mouth. She smelled alcohol on his breath. Ms. Scott freed herself and starting screaming again, and her next door neighbor turned on her porch light. Ms. Scott's intruder fell down, then got up and ran out of the room toward the back door. Then he came back through the house and, after fumbling with the front door and screen door, he managed to exit the house.

Ms. Scott called the police while the man was still in her house. Officer Jamie Hunsucker and Sergeant R.D. Lawing of the Troy Police Department responded to the call. Sergeant Lawing, after searching the area, determined that entry into the house had been made through a bathroom window. The window had been reached by climbing onto a tall bucket, from there onto an oil tank beneath the window, and removing the screen over the window. Ms. Scott told Officer Hunsucker that she had seen the intruder the previous day climbing the utility pole next to her house. Based upon prior knowledge, Officer Hunsucker suspected that the defendant had been her

assailant. Officer Hunsucker assembled a photographic lineup which contained a photograph of the defendant and seven others with similar appearance. Ms. Scott quickly selected defendant's photograph. Officer Hunsucker then obtained a warrant, and went to the defendant's residence to arrest him. At about 4:50 a.m., defendant's brother let Officer Hunsucker into the defendant's residence. At that time, defendant was in bed in his room. Officer Hunsucker testified that the defendant was not dressed and that he smelled of alcohol. Officer Hunsucker placed the defendant under arrest and took him to the magistrate's office, where he read the defendant his *Miranda* rights. Defendant waived his rights and Officer Hunsucker interviewed him before the defendant decided not to speak anymore. However, defendant told the officer that "he had been drinking with his friends the night—the evening before, the night before, and that he had gotten so drunk at that time that he couldn't tell me exactly when he left from where him and his friends were drinking."

Mr. Kerry Drake testified that about 8:30 that evening, he saw the defendant trying to cross the road on a bicycle. Mr. Drake described the defendant as so drunk that he took his bicycle out into traffic and "I yelled at him get out the road, man, before you get ran over." After defendant got across the road, "he dropped his bicycle, then he fell over the bicycle, then I helped him up." Defendant was unable to get back on the bicycle, so Mr. Drake picked him up, put his arm around his waist, and walked him to his home, about a block away. Lilas Edward Keitt, the defendant's brother, testified that after Mr. Drake brought the defendant home, Lilas helped the defendant to his room where he went to bed. At that time, defendant was so badly intoxicated he could barely stand on his own. Lilas Keitt left the home shortly thereafter and returned at around 11:00 p.m. At that time, the defendant was still in his room. Lilas Keitt testified that to his knowledge, defendant did not leave the house during the night.

At the close of the State's evidence, the defense made a motion to dismiss, which the trial court denied. At the close of all evidence, the defense requested that the court instruct the jury on misdemeanor breaking and entering based upon evidence of intoxication. The court declined to give the instruction on misdemeanor breaking and entering based on intoxication, but then decided to give the instruction because the evidence of intent was equivocal. The court did not instruct the jury on voluntary intoxication.

The jury returned a verdict of guilty of first-degree burglary on 28 February 2001. The court sentenced the defendant to a minimum

term of 103 months and a maximum of 133 months. Defendant appealed and raised ten assignments of error. He has brought forward numbers 1, and 5 through 10. Thus, he has abandoned assignments of error 2, 3, and 4. *See* N.C. R. App. Proc. 10(a) (2001).

[1] In his first argument, defendant contends that the trial court erred in denying his motion to dismiss on the grounds of insufficiency of the evidence. "A motion to dismiss is properly denied if there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense." *State v. McDonald,* 151 N.C. App. 236, 242, 565 S.E.2d 273, 277 (2002) (quoting *State v. Lynch,* 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Franklin,* 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990). When ruling on a motion to dismiss, "[t]he evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal." *State v. Bumgarner,* 147 N.C. App. 409, 412, 556 S.E.2d 324, 327-28 (2001).

Here, the offense charged is first-degree burglary. "The elements of first-degree burglary are: (1) breaking, (2) and entering, (3) at night, (4) into the dwelling, (5) of another, (6) that is occupied, (7) with the intent to commit a felony therein." *State v. Lucas,* 353 N.C. 568, 581, 548 S.E.2d 712, 721-22 (2001); *see also* N.C. Gen. Stat. § 14-51 (2001). On appeal, the defendant contests only the sufficiency of the evidence pertaining to the element of intent to commit a felony.

The State argued, and the trial court agreed that the well-established "*McBryde* inference" applied to allow the jury to infer the defendant's intent to commit the felony of larceny. In *State v. McBryde,* the Court explained the inference:

> The intelligent mind will take cognizance of the fact, that people do not usually enter the dwellings of others in the night time, when the inmates are asleep, with innocent intent. The most usual intent is to steal, and when there is no explanation or evidence of a different intent, the ordinary mind will infer this also. The fact of the entry alone, in the night time, accompanied by flight when discovered, is some evidence of guilt, and in the absence of any other proof, or evidence of other intent, and with

no explanatory facts or circumstances, may warrant a reasonable inference of guilty intent.

*State v. McBryde*, 97 N.C. 393, 397, 1 S.E. 925, 927 (1887).

Defendant argues that in a series of more recent cases, the appellate courts have held that the State is not entitled to the *McBryde* inference when the defendant produces evidence to rebut the presumption of intent to commit a felony. *See, e.g., State v. Moore*, 62 N.C. App. 431, 303 S.E.2d 230 (1983) (holding that the State could not infer intent to commit larceny because defendant produced evidence that he was coerced into entering the dwelling); *State v. Lamson*, 75 N.C. App. 132, 330 S.E.2d 68, *disc review denied*, 314 N.C. 545, 335 S.E.2d 318 (1985) (noting that the defendant produced evidence that he mistakenly thought he was entering his neighbor's house, where a friend of his was staying); *State v. Humphries*, 82 N.C. App. 749, 348 S.E.2d 167 (1986), *disc. review improv. allowed*, 320 N.C. 165, 357 S.E.2d 359 (1987) (describing how defendants each mistakenly thought the other had permission to enter the dwelling). Defendant argues that because he introduced evidence that he was so intoxicated "that he was mistaken about where he was and what he was doing," that he rebutted the *McBryde* inference, and it should not apply. Thus, defendant argues that because there was no other evidence of the element of intent, the burglary charges should have been dismissed.

In the context of a motion to dismiss, however, we review all evidence in the light most favorable to the State. *See State v. Davis*, 130 N.C. App. 675, 679, 505 S.E.2d 138, 141 (1998). "[T]he defendant's evidence should be disregarded unless it is favorable to the State or does not conflict with the State's evidence." *State v. Jones*, 147 N.C. App. 527, 545, 556 S.E.2d 644, 655 (2001), *disc. review denied*, 355 N.C. 351, 562 S.E.2d 427 (2002). Moreover, in *Bumgarner*, this Court recently faced the issue of whether the State, relying upon the *McBryde* inference, sufficiently showed evidence of intent to commit larceny. The Court ruled that "[t]he indictment having identified the intent necessary, the State was held to the proof of that intent. Of course, intent or absence of it may be inferred from the circumstances surrounding the occurrence, but the inference must be drawn by the jury." *Bumgarner*, 147 N.C. App. at 416, 556 S.E.2d at 330. Here, defendant falls within the scope of the *McBryde* rule, as he entered the dwelling place of another at night, he attempted to keep Ms. Scott from screaming, and then he tried to flee. *See McBryde*, 97 N.C. at 397, 1 S.E. at 927 (1887). In the cases he cites, each defendant pre-

sented evidence of both intoxication and an alternative explanation for his presence in the dwelling. Here, defendant presented evidence of intoxication, but nothing more. In light of his incriminating behavior inside the house, we do not believe he rebutted the presumption. Thus we conclude, viewing the evidence in the light most favorable to the State, that the trial court properly denied the defendant's motion to dismiss.

[2] Defendant next argues that the trial court erred in refusing to instruct the jury on the issue of voluntary intoxication. The State argues that the defendant waived this argument by not formally objecting to the instructions before the jury retired to deliberate, as is generally required under North Carolina Rule of Appellate Procedure 10(b)(2) (2001). *See Kinsey v. Spann*, 139 N.C. App. 370, 373, 533 S.E.2d 487, 490 (2000). Formal objection to the instructions, however, is not the only way of preserving the issue for appeal. *See Guyther v. Nationwide Insurance Co.*, 109 N.C. App. 506, 428 S.E.2d 238 (1993). "No formal objection . . . is required under Rule 10(b)(2) if a party submits a request to alter an instruction during the charge conference and the trial judge considers and refuses the request to alter." *Id.* at 516-17, 428 S.E.2d at 244. Here, the defendant requested that the trial court instruct the jury on misdemeanor breaking and entering, based upon the defendant's intoxication, and the trial court refused. Although the trial court did instruct on misdemeanor breaking and entering, it did not instruct on voluntary intoxication. Before the jury retired to deliberate, the following exchange occurred:

> THE COURT: Do you desire to being [sic] forward your exception that the Court did not instruct on intoxication?
>
> MR. ATKINSON (defense counsel): Yes, Your Honor, we would.
>
> THE COURT: That is brought forward and preserved.

Therefore, this issue is properly before this Court.

[3] We recently explained the rule concerning jury instructions on voluntary intoxication as follows:

> Before the trial court will be required to instruct on voluntary intoxication, defendant must produce substantial evidence which would support a conclusion by the trial court that at the time of the crime for which he is being tried defendant's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming [the requisite intent to commit the

crime.] In the absence of some evidence of intoxication to such degree, the court is not required to charge the jury thereon.

*State v. Kornegay*, 149 N.C. App. 390, 395, 562 S.E.2d 541, 545 (2002) (citations omitted) (internal quotations omitted), *disc. review denied*, 355 N.C. 497, 564 S.E.2d 51 (2002). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Franklin*, 327 N.C. at 171, 393 S.E.2d at 787. "When determining whether the evidence is sufficient to entitle a defendant to jury instructions on a defense or mitigating factor, courts must consider the evidence in the light most favorable to the defendant." *State v. Mash*, 323 N.C. 339, 348, 372 S.E.2d 532, 537 (1988).

Viewing the evidence in the light most favorable to the defendant, we conclude that the defendant did produce substantial evidence to show that at the time of the crime for which he was tried, his mind was so completely intoxicated that he was utterly incapable of forming the necessary intent to commit larceny. Mr. Drake testified that at some time between 8:30 p.m. and 9:00 p.m. on the night of the break-in, the defendant was so intoxicated that he was unable to ride a bicycle or even walk home on his own. Lilas Keitt testified that when Mr. Drake brought the defendant home, the defendant was barely able to stand on his own. Ms. Scott testified that she smelled alcohol on defendant and that when he was trying to leave her home, he had trouble navigating and fumbled with the door and screen door, trying to get them open. Finally, when Officer Hunsucker went to arrest the defendant the next morning, he smelled alcohol on the defendant. Seen in the light most favorable to the defendant, a reasonable jury could conceivably accept this evidence as giving rise to an inference that at the time of the crime, the defendant was too intoxicated to form the necessary intent to commit larceny. In *State v. Golden*, where defendant requested a jury instruction on voluntary intoxication and presented evidence to support his request, this Court noted "if a request be made for a special instruction, which is correct in itself and supported by evidence, the court must give the instruction at least in substance." *State v. Golden*, 143 N.C. App. 426, 434, 546 S.E.2d 163, 168 (2001) (citations omitted) (internal quotations omitted). We find, therefore, that the trial court erred in denying the defendant's request for a jury instruction on voluntary intoxication.

The question then becomes whether the trial court's error requires a new trial. Under N.C. Gen. Stat. § 15A-1443 (2001),

**STATE v. KEITT**

[153 N.C. App. 671 (2002)]

[a] defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant.

In *Mash*, defendant requested, and was given, a jury instruction on voluntary intoxication as a defense to negate specific intent. The jury was instructed on first degree murder, which requires a specific intent; second degree murder, which does not; and voluntary intoxication. *See Mash*, 323 N.C. at 344-45, 372 S.E.2d at 535-36. However, the trial court incorrectly phrased the instruction on voluntary intoxication, and impermissibly placed the burden of persuasion on the defendant. *See id.* The Supreme Court ruled that because the central issue at trial was that of intent, "had the error in the instruction on intoxication not been made, there is a reasonable possibility that a different result would have obtained at trial." *Id.* at 350, 372 S.E.2d at 538-39. Although the error here was not in misstating the instruction but rather not giving it at all, we conclude that defendant has shown a reasonable possibility that a different result would have occurred had the instruction been given. Because of this error, the defendant must be accorded a new trial.

New trial.

Judge BIGGS concurs.

Judge GREENE dissents.

GREENE, Judge, dissenting.

Because I believe the *McBryde* inference is inapplicable in this case, I respectfully dissent. While I agree with the majority that the trial court erred in failing to instruct the jury on the issue of voluntary intoxication, I do not reach this issue in my analysis.

In proving the elements of the crime of burglary, the State may attempt to rely on the *McBryde* inference to establish the defendant's intent to commit larceny. *State v. McBryde*, 97 N.C. 393, 396-97, 1 S.E. 925, 927 (1887). In *McBryde*, our Supreme Court stated a defendant's entry into a dwelling, at night time, coupled with the defendant's subsequent flight upon discovery "may warrant a reasonable inference of

**STATE v. KEITT**

[153 N.C. App. 671 (2002)]

guilty intent," the most common being the intent to steal. *Id.* This inference, however, only applies "in the absence of *any* other proof, or evidence of other intent, and with no explanatory facts or circumstances." *Id.* at 397, 1 S.E. at 927 (emphasis added). Thus, if there is any evidence tending to show the defendant lacked the requisite intent, the State cannot overcome a challenge for insufficiency of the evidence by resting on the *McBryde* inference.[1] In analyzing the applicability of the *McBryde* inference, the evidence must be viewed in the light most favorable to the defendant because use of the inference greatly lowers the otherwise high burden of proof the State must meet in a criminal prosecution. *See, e.g., State v. Lamson,* 75 N.C. App. 132, 135, 330 S.E.2d 68, 70 (1985) (considering only the defendant's evidence, not the State's inculpatory evidence, in deciding applicability of *McBryde* inference).

In this case, the evidence establishes defendant was heavily intoxicated on the night of the alleged burglary. When the victim discovered defendant in her home, she saw no indication he "had taken anything or was attempting to take anything." The evidence further indicates the victim's house as being situated within three blocks of three "drink houses" and between defendant's home and two of those "drink houses." This circumstantial evidence, viewed in the light most favorable to defendant, is some evidence supporting a reasonable inference defendant mistakenly entered the victim's house because he was too intoxicated to distinguish between the victim's house and his home or the nearby "drink houses." As the *McBryde* inference thus did not apply and the State did not present any evidence of intent to commit larceny, defendant's motion to dismiss the burglary charge should have been granted. Furthermore, as the jury found the existence of all the elements of the lesser-included offense of misdemeanor breaking or entering, this case should be remanded for entry of judgment and sentencing on the crime of misdemeanor breaking or entering. *See State v. Lawrence,* 352 N.C. 1, 18, 530 S.E.2d 807, 818 (2000) (misdemeanor breaking or entering, a lesser-included offense of first-degree burglary, does not require intent to commit a felony within the dwelling). Because of the need to remand this case, I do not address whether the State's statements to the jury were improper.

---

1. Whether the *McBryde* inference applies in a given case is a preliminary analysis that occurs before the court engages in the traditional consideration of the State's evidence to determine whether, seen in the light most favorable to the State, it is substantial as to each element of the offense charged.