McGEE, Judge.
Leonard Keitt (defendant) was originally convicted of first degree burglary on 28 February 2001. He appealed and this Court awarded him a new trial on 5 November 2002. State v. Keitt, 153 N.C. App. 671, 571 S.E.2d 35 (2002), aff'd per curiam, 357 N.C. 155, 579 S.E.2d 250 (2003). Defendant was again convicted of first degree burglary and sentenced to eighty-four to one hundred ten months in prison on 25 July 2003. Defendant appeals, raising four issues: (1) the trial court erred in denying defendant's motion to dismiss, (2) the trial court erred in allowing the State to argue facts outside the record and in denying defendant's motion for mistrial based on these improper arguments, (3) the trial court erred in failing to give a requested instruction on specificintent, and (4) the trial court erred in ordering defendant to pay attorney's fees from his first trial and appeal. We find no error on the first three issues, but we remand on the fourth issue for the entry of attorney's fees related only to the second trial. Defendant does not present arguments on his assignments of error numbers two and five, and they are deemed abandoned pursuant to N.C.R. App. P. 28(b)(6).
At trial, the State's evidence tended to show that Lola Hogan (Hogan) was ninety-two years old, and that her granddaughter, Phyllis Scott (Scott), helped to care for Hogan and stayed at Hogan's house each night. Scott and Hogan went to sleep around 8:00 p.m. on 31 August 2000. They slept in separate beds in the same room. Around 2:00 a.m. on 1 September 2000, Scott awoke and saw defendant standing in the living room, which was just outside the bedroom. Scott screamed and defendant ran over to her and covered her mouth with his hand to silence her, "busting" Scott's lip in the process. Scott smelled alcohol on defendant and recognized him as someone she had previously seen in the neighborhood.
After Scott screamed, a neighbor turned on a porch light and defendant tried to get out the back door. Finding the back door locked, defendant turned around and went through the front screen door as Scott was calling 911. Once defendant left the house, Scott noticed that the bathroom window was open; it had been closed when she went to bed. There was also black dirt on the bathroom rug. Scott told the police that although she did not know defendant's name, she had seen him in the neighborhood climbing up utility poles to connect cable television. Scott had also seen defendant riding a bike near Hogan's house on the afternoon of 31 August 2000. He had said hello to Scott and asked how she was doing. Based on Scott's description of defendant, police presented Scott with an array of eight photographs, including one photograph of defendant. Scott immediately identified defendant.
About three hours after the burglary, after obtaining a warrant for defendant's arrest, police found defendant at his home, which was approximately four miles from Hogan's home. Defendant was sleeping and there was an odor of alcohol about him. The officers placed defendant under arrest and brought him to the magistrate's office where they read him his Miranda rights. The police then asked defendant about his activities that night. One of the officers testified that defendant did not appear to be impaired by alcohol, that he was coherent, and that he was able to walk and to dress himself without any difficulty.
Defendant's evidence at trial tended to show that on the night of 31 August 2000, defendant had been drinking with his friends until about 8:00 p.m. Defendant now asserts that he was "falling-down drunk" on that night and that "he did not remember anything after about 8:00 p.m." One of defendant's friends, Kerry Drake (Drake), testified that he had seen defendant wobbling on his bike as he crossed the road some time between 8:00 p.m. and 8:30 p.m. Drake yelled for defendant to get out of the road. Drake saw onecar stop to avoid hitting defendant, who had fallen off his bike in front of the car. Drake testified that defendant had smelled strongly of alcohol and that Drake had helped defendant get home. Drake further testified that he had seen defendant so intoxicated on previous occasions that defendant was "completely out of it," and that defendant was that drunk on the night of 31 August 2000.
Defendant's brother, Lilas Keitt (Keitt), testified that he was home on the evening of 31 August 2000 when Drake brought defendant home. Keitt dragged defendant to bed and then went out for a couple of hours. Keitt testified that when he returned around 11:00 p.m. or 11:30 p.m., he checked on defendant, who was still in his bed. Keitt then went to bed in his bedroom, which was adjacent to defendant's bedroom, and did not wake until police arrived early the next morning looking for defendant. Keitt could not say whether defendant had left either his bedroom or the house at any time during the night.
I.
Defendant first argues that the trial court erred in denying his motion to dismiss because there was no evidence of defendant's having the intent to commit larceny. We disagree. A defendant's motion to dismiss should be denied when "there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." State v. Powell, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequateto support a conclusion." State v. Fletcher, 301 N.C. 709, 712, 272 S.E.2d 859, 861 (1981). In ruling on a defendant's motion to dismiss, the trial court must consider the evidence in the light most favorable to the State and the State is entitled to every reasonable inference that can be drawn from the evidence. Powell, 299 N.C. at 99, 261 S.E.2d at 117.
The essential elements of first degree burglary are: (1) the breaking, (2) and entering, (3) at night, (4) into a dwelling of another, (5) that is occupied, and (6) with the intent to commit a felony therein. State v. Singletary, 344 N.C. 95, 101, 472 S.E.2d 895, 899 (1996); see also N.C. Gen. Stat. § 14-51 (2003). Larceny is deemed to be a felony under the statute regardless of the value of the property at issue. N.C.G.S. § 14-51.
In the present case, the only element in dispute is whether defendant had a felonious intent. Generally, when the State is trying to prove that a defendant had the intent to commit larceny, the "State must have presented evidence sufficient for the jury to find that, at the time [the defendant] entered the residence, [he] intended to take and carry away the personal property of another without consent and with the intent to permanently deprive the owner of that property." State v. Humphries, 82 N.C. App. 749, 751, 348 S.E.2d 167, 168-69 (1986). However, our Courts have long held that a jury may reasonably infer the intent to commit larceny when a defendant enters a dwelling at night without consent and flees upon being discovered at the scene, and there are no other "explanatory facts or circumstances" as to why a defendant enteredthe property. State v. McBryde, 97 N.C. 393, 397, 1 S.E. 925, 927 (1887). The reason for allowing this inference is that
[t]he intelligent mind will take cognizance of the fact that people do not usually enter the dwellings of others in the night-time, when the inmates are asleep, with innocent intent. The most usual intent is to steal, and when there is no explanation or evidence of a different intent, the ordinary mind will infer this also.
Id. at 396, 1 S.E. at 927. The State did not present any evidence on defendant's intent to commit larceny, and defendant argues that the State was not entitled to a McBryde inference because defendant had presented "explanatory facts or circumstances" that would negate the inference.
In support of his argument, defendant cites four cases where this Court held that there was insufficient evidence to support a conviction of first or second-degree burglary because the defendant had presented "explanatory facts or circumstances" as to why the defendant had entered the dwelling that negated the McBryde inference. First, defendant cites State v. Moore where the defendant entered an occupied home at night, but produced evidence showing he had been forced at knife-point to enter the house. Moore, 62 N.C. App. 431, 433-34, 303 S.E.2d 230, 232 (1983). Second, defendant cites State v. Lamson, where the defendant had broken into and was trying to enter a home at night when he was confronted by the occupant of the dwelling. Lamson, 75 N.C. App. 132, 132, 330 S.E.2d 68, 70-71, disc. review denied, 314 N.C. 545, 335 S.E.2d 318 (1985). In Lamson, the defendant's evidence showed that he may have been operating under a mistake of fact because hehad occasionally visited his friend who was staying next door to the house the defendant had tried to enter, and that these two houses looked alike. Id. at 136, 330 S.E.2d at 70-71. Third, defendant directs us to State v. Humphries, where each defendant testified that each believed the apartment he broke into was that of his co-defendant's girlfriend, and that each defendant had permission to enter the apartment. Humphries, 82 N.C. App. 749, 751, 348 S.E.2d 167, 169 (1986). Finally, defendant argues that In re Mitchell should apply in this case. Mitchell, 87 N.C. App. 164, 359 S.E.2d 809 (1987). In Mitchell, the defendant broke and entered into a house, but when the defendant was found by the occupant, the defendant said that she was trying to escape from someone chasing her. Id. at 164, 359 S.E.2d at 810.
Defendant argues that the present case is similar to these cases because the evidence tended to show that he was drunk and that he "may have been mistaken about whether the house he entered was a 'drink house' or even his own house." Defendant presented evidence that he was intoxicated, and that there were a couple of "drink houses" close to Hogan's house, but he did not actually present any evidence that he was mistaken about the house he entered. Defendant did not present evidence that he thought the house was a "drink house." Nor did defendant present any evidence conveying a different reason as to why he entered the house.
Being intoxicated, by itself, is not an explanatory fact or circumstance for why defendant broke and entered into Hogan's house. Neither is the mere fact that there might have been "drinkhouses" in close proximity to Hogan's house. The present case is thus distinguishable from the cases cited by defendant in that the defendants in all of those cases actually presented evidence of "explanatory facts or circumstances" as to why they might have entered the dwellings other than to commit larceny. Since defendant did not present any evidence as to why he was in Hogan's house in the early morning hours of 1 September 2000, the State was entitled to a McBryde inference on defendant's intent. As our Supreme Court wrote in McBryde,
[t]he intent, which is the substantive crime charged, is not the object of sense; it cannot be seen or felt, and if felonious, is not usually announced; so where no felony has been actually consummated (in which case the intent may be presumed from the act), it would be difficult to prove any crime consisting of the intent alone, unless the jury be allowed to infer the intent from circumstances.
McBryde, 97 N.C. at 397, 1 S.E. at 927.
Furthermore, the State presented evidence that defendant had entered the dwelling at night and had fled the scene. Under McBryde, this evidence qualifies as substantial evidence on the intent element of first degree burglary. "The fact of the entry alone, in the night-time, accompanied by flight when discovered, is some evidence of guilt, and in the absence of any other proof, or evidence of other intent, and with no explanatory facts or circumstances, may warrant a reasonable inference of guilty intent." Id. at 397, 1 S.E. at 927. Viewing this evidence in the light most favorable to the State, the trial court properly denied defendant's motion to dismiss. Moreover, the trial court did not err in denying defendant's motion to dismiss because defendant made this same argument on appeal after his first conviction and this argument was rejected by the majority of this Court. In Keitt, 153 N.C. App. at 675-76, 571 S.E.2d at 38, the majority held that the defendant fell "within the scope of the McBryde rule." Since defendant does not claim that any different facts were presented at his second trial, this Court's rejection of that argument became the law of the case, and thus the trial court was correct in permitting the issue of first degree burglary to go to the jury.
'As a general rule, when an appellate court passes on questions and remands the case for further proceedings to the trial court, the questions therein actually presented and necessarily involved in determining the case, and the decision on those questions become the law of the case[.]' Under the law of the case doctrine, an appellate court ruling on a question governs the resolution of that question both in subsequent proceedings in the trial court and on a subsequent appeal, provided the same facts and the same questions, which were determined in the previous appeal, are involved in the second appeal.
Arnold v. Wal-Mart Stores, Inc., ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (2004) (NO. COA03-1080) (filed 1 June 2004) (quoting Transporation, Inc. v. Strick Corp., 286 N.C. 235, 239, 210 S.E.2d 181, 183 (1974)) (additional citations omitted)). Thus, defendant's assignment of error is without merit.
II.
Defendant argues that the trial court erred in allowing the State to argue facts outside the record in its closing statement tothe jury, and in denying defendant's mistrial motion based on these improper arguments. Defendant argues that the State violated his due process rights and the "Criminal Procedure Act" when the State argued that defendant knew an elderly woman lived in the home. Specifically, defendant objected to the following portion of the State's closing argument:
[defendant] was familiar with this neighborhood, very familiar with this house. He'd been on this [utility] pole. He knew who lived there, of course. He knew there was an elderly women there. . . [Defendant] knew he was breaking into somebody's house to steal something. To steal. That's why he went in there, looking for a victim who wouldn't fight back, an elderly woman, an old woman who wouldn't be able to give a description. An old person like that wouldn't have been able to fight him off if there had been trouble. It takes a bold, bold person to break into somebody's house. Because if somebody wakes up, there's going to be a fight. So you got to look for the type victim that would be easy to take advantage of. Somebody like Ms. Hogan.
Before closing arguments, defendant filed a motion in limine to prohibit the State from saying certain things in its closing argument. The trial court granted the motion in part and denied it in part. The trial court prohibited the State from saying that defendant "knew there was a ninety-three-year-old woman" living in the house (emphasis added) and from saying that defendant knew "anything about [Hogan having] strokes." However, the trial court acknowledged that "there is at least some indication there that [defendant] could have known and may have known that it was an old lady that needed assistance." The trial court cautioned the State to "tread carefully." In addition to filing his motion in limine, defendant objected at trial to the State's use of "easy to take advantage of," but the trial court overruled this objection. After the jury delivered a guilty verdict, defendant moved for a mistrial due to what defendant deemed to be improper arguments by the State. This motion was also denied. Defendant argues that while the State did not break the letter of its promise to the trial court about what it would or would not say during its closing argument, the State broke the spirit of its promise. We disagree.
A trial court has discretion about what to allow and what not to allow in jury arguments, and the trial court's decision is only overturned if there is a gross abuse of discretion. State v. Hunter, 297 N.C. 272, 278, 254 S.E.2d 521, 524 (1979). Attorneys are limited in what they say in jury arguments by N.C. Gen. Stat. § 15A-1230 (2003), which states that:
[d]uring a closing argument to the jury an attorney may not become abusive, inject his personal experiences, express his personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant, or make arguments on the basis of matters outside the record except for matters concerning which the court may take judicial notice. An attorney may, however, on the basis of his analysis of the evidence, argue any position or conclusion with respect to a matter in issue.
Aside from the above limitations, however, attorneys are given wide latitude in their jury arguments and are "entitled to argue the law and the facts in evidence together with all reasonable inferences to be drawn therefrom." Hunter, 297 N.C. at 278, 254 S.E.2d at 524 (citing 4 Strong's N.C. Index 3d, Criminal Law § 102.1). The State's evidence showed defendant had been in the neighborhood on several occasions prior to the night of the break-in. It further showed that defendant had seen and spoken to Scott on the afternoon of the day he broke into Hogan's house. The State's evidence showed that defendant lived about four miles away from Hogan's house. Thus, the inference that defendant had seen who lived in the house and had planned to break into the house was permissible. By arguing that defendant knew that an elderly woman lived in the house into which he broke and entered, the State was simply arguing a particular position based on its analysis of the evidence. See N.C.G.S. § 15A-1230. The trial court did not abuse its discretion in allowing the State this latitude.
Defendant asserts that his case is analogous to that of State v. Monk, where a new trial was ordered in a capital murder case because the attorney had made improper comments during his jury argument. Monk, 286 N.C. 509, 514-18, 212 S.E.2d 125, 130-32 (1975). The defendant in Monk had objected and the trial court overruled the objection. Id. at 514-15, 212 S.E.2d at 130. However, defendant in the present case ignores the fact that the improper comments in Monk involved the State's trying to infer that the defendant was guilty by pointing out how the defendant had not testified. Id. at 516-17, 212 S.E.2d at 131-32. The present case involves no such improper comments by the State. There is no evidence that the State made any comments other than those involving appropriate inferences from the facts. Thus, the trial court did not err when it overruled defendant's objection to theState's closing argument or when it denied defendant's subsequent motion for a mistrial.
III.
Defendant next argues that the trial court erred in failing to give a requested jury instruction on specific intent. Defendant asserts that "[t]he trial court denied [his written] request for specific instruction and charged the jury without it." When instructing the jury, a trial court has the duty to present and explain the relevant law based on the evidence. State v. Corn, 307 N.C. 79, 86, 296 S.E.2d 261, 266 (1982), overruled on other grounds by State v. Mlo, 335 N.C. 353, 440 S.E.2d 98 (1994). Regarding requested instructions, a trial court must instruct the jury on the substance of the requested instructions, assuming they are consistent with facts and state valid law, but the trial court does not have to give requested instructions verbatim. Corn, 307 N.C. at 86, 296 S.E.2d at 266.
Defendant's written request proposed to instruct the jury as to the sixth element of burglary in the following way:
[a]nd Sixth, that at the time of the breaking and entering the defendant intended to commit larceny.
I further charge however, that as it pertains to the element of Defendant's intent to commit larceny if you find that because of Defendant's voluntary intoxication or other circumstances established by the evidence there is any evidence the Defendant lacked the specific intent to commit the felony of larceny, the State must produce evidence that satisfies you beyond a reasonable doubt that the Defendant had the specific intent to commit larceny and you may not infer that the Defendant had the intent to commit the felonyof larceny.
Whereas, the actual jury instruction given by the trial court was:
[a]nd Sixth, that at the time of the breaking and entering the defendant intended to commit larceny.
Now, a larceny is the taking and carrying away of the personal property of another without the owner's consent with the intent to deprive the owner of the possession of the property permanently. The intruder need not be successful in committing the larceny in order for the breaking and entering to be a burglary. The intruder must merely intend to commit the larceny when he or she breaks and enters.
If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant broke into and entered an occupied dwelling house without the owner, tenant, or occupant's consent during the nighttime and at that time intended to commit a felonious larceny, it would be your duty to return a verdict of guilty of First Degree Burglary.
. . . .
Now, there's also evidence of intoxication. If you find that the defendant was intoxicated, you should consider whether this condition affected his ability to formulate the specific intent which is required for the conviction of First Degree Burglary. In order for you to find the defendant guilty of First Degree Burglary, you must find beyond a reasonable doubt that he had the specific intent to commit larceny _ to commit larceny, which is required to commit the offense of first degree burglary. If as a result of intoxication the defendant did not have the required specific intent to commit larceny, you must find the defendant not guilty of . . . First Degree Burglary.
Defendant's requested instructions substantively involved specific intent to commit larceny and how voluntary intoxication may havenegated defendant's ability to form the requisite specific intent. The trial court's instructions to the jury covered the substance of defendant's request and explained the relevant law presented by the evidence in a clear and comprehensive manner. Thus, there is no error.
IV.
Finally, defendant argues that the trial court erred in ordering defendant to pay attorney's fees for his first trial and for his successful appeal where a new trial was ordered. Defendant analogizes the present case to State v. Rogers, 161 N.C. App. 345, 587 S.E.2d 906 (2003). In Rogers, the defendant was convicted of first degree murder and was not held responsible for paying his attorney's fees for his first trial where he had been granted a new trial on appeal, even though he was convicted again at the second trial. Id. at 346, 587 S.E.2d at 907-08. Specifically, this Court held that since the first conviction was annulled when the North Carolina Supreme Court ordered a new trial, N.C. Gen. Stat. § 7A-455(c) (2003), which provides that a defendant can only be charged attorney's fees if convicted, did not apply.
In the case before us, like the defendant in Rogers, defendant was convicted, granted a new trial, and was convicted again. Defendant argues that Rogers controls our present case. The State argues, however, that defendant should be procedurally barred from raising this issue because his counsel did not raise the issue at trial, and defendant, therefore, waived his right to appeal this issue pursuant to N.C.R. App. P. 10. However, "to prevent manifestinjustice" to defendant, we will address this issue pursuant to N.C.R. App. P. 2.
In Rogers, the defendant had court-appointed counsel for his first trial and then chose to retain private counsel for his second trial. Rogers, 161 N.C. App. at 345, 587 S.E.2d at 907. It was this second attorney who raised the objection to the defendant's paying the attorney's fees for his first trial and appeal. Id. at 346, 587 S.E.2d at 907. The second attorney, arguing on behalf of the defendant, was not going to be affected directly by the trial court's decision on the matter. By contrast, in the present case, defendant was appointed the same attorney for both his first and second trials. Defendant should not be penalized for not raising the issue at trial, when the very person who would raise an objection is the one who stood to be paid. Similarly, a defense counsel should not be placed in the untenable position of being expected to object to being paid his or her fees.
The State argues that the present case can be distinguished from Rogers, in that the defendant in Rogers was convicted of first degree murder and a new trial was ordered because the defendant was rendered ineffective assistance of counsel. Rogers, 161 N.C. App. at 345, 587 S.E.2d at 907. The defendant's counsel in Rogers had insufficient time to prepare for the first trial. Therefore, the defendant's Sixth Amendment rights were violated. Id.; see also State v. Rogers, 352 N.C. 119, 125-26, 529 S.E.2d 671, 675-76 (2000). The State argues that while it makes good policy not to charge a defendant for a trial where he had ineffective assistanceof counsel, such is not the case here. Our decision in Rogers, however, is not limited, as the State suggests.
Rather, as defendant argues, our holding in Rogers applies in the present case because defendant was granted a new trial on his first appeal, which overturned defendant's first conviction. Under N.C. Gen. Stat. § 7A-455(c) (2003), a defendant can only be charged attorney's fees for appointed counsel when he is convicted. Since a new trial was ordered for defendant, he is not responsible for his appointed attorney's fees for the annulled conviction. Furthermore, since the first appeal was part of the first trial, defendant is not responsible for paying the fees associated with his first appeal. The trial court erred in ordering defendant to pay the attorney's fees for his first trial and successful appeal. We vacate that order for attorney's fees. We remand for the entry of an order for attorney's fees related only to the second trial and second appeal.
No error in defendant's trial; vacated and remanded as to attorney's fees.
Judges McCULLOUGH and ELMORE concur.
Report per Rule 30(e).