STATE OF NORTH CAROLINA, Plaintiff v. ROBERT ELESTER GOODWIN, Defendant

No. COA06-1395

(Filed 6 November 2007)

**Evidence— prior crimes or bad acts—useful only to show propensity to violence—prejudicial**

The trial court erred in an assault prosecution in which defendant claimed self-defense by allowing the State to cross-examine defendant about prior assault charges in which defendant claimed self-defense and which were voluntarily dismissed.

The evidence could only be considered as proof of defendant's violent disposition, and specifically his propensity to attack on slight provocation and then claim self-defense. The error was prejudicial because there were no witnesses other than the victim and defendant, and the evidence certainly could have had a significant effect upon defendant's credibility. N.C.G.S. § 8C-1, Rule 404(b).

Appeal by defendant Robert Elester Goodwin from judgment entered 2 June 2006 by Judge James W. Morgan in Mecklenburg County Superior Court. Heard in the Court of Appeals 26 April 2007.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General, Stormie D. Forte, for the State.*

*Russell J. Hollers, III, for Defendant-Appellant.*

STROUD, Judge.

Defendant appeals from his conviction of assault with a deadly weapon inflicting serious injury (AWDWISI). Defendant contends that the trial court erred in allowing the State to cross-examine him about criminal charges from 1997 and 2001 which were voluntarily dismissed.[1] We agree. For the reasons stated below, we set aside defendant's conviction for AWDWISI and remand for a new trial.

## I. Background

Defendant and Larry Howard ("Howard"), a younger, taller, heavier, and stronger man, lived in the same boarding house. Defendant customarily collected weekly rents from the tenants in the boarding house on behalf of the owner.

On 19 November 2004, defendant stabbed Howard in the abdomen with a knife, cutting his intestines and the main artery to his lung. Howard was taken to the hospital, where he had surgery and was hospitalized for about a week. Defendant and Howard were the only witnesses to the incident who testified at trial.

Defendant offered the following version of the incident: Defendant was drinking beer the afternoon of 19 November 2005. Howard paid his rent to defendant that afternoon, but then came

---

1. Defendant also contends that the trial court erred in sentencing him as a level III offender based on his prior convictions in New Jersey, however, because we grant defendant a new trial, the sentencing issue becomes moot.

back about an hour later and wanted $35 or $40 of his rent money back to give to April, his female companion. Defendant refused. After being denied return of the money, Howard went away, then returned about ten minutes to throw a beer bottle through a window at defendant. Defendant and Howard then got into a "scuffle." Howard hit defendant on the shoulder with a two to three feet long iron pipe. In an effort to protect himself from his younger, taller, stronger and heavier adversary, defendant swung a knife at Howard.

Howard offered a very different version of the incident: After getting off work on 19 November 2004, Howard went to pay his rent to defendant. After paying his rent, Howard then left to get groceries. When he returned to the boarding house, he saw defendant and April in defendant's room. Defendant was drunk and enraged. It appeared to Howard that April was frightened of defendant and that she wanted to get out of defendant's room. Howard confronted defendant about April wanting to leave and then opened the door to let her out. After Howard turned back around, defendant stabbed him in the stomach with a knife. Howard testified that he did not have any sort of tool or weapon and that he did not threaten defendant in any way prior to the stabbing. After the stabbing, Howard was able to see that defendant had a pocketknife in his hand. Howard immediately left the boarding house and went to a nearby convenience store to call the police and an ambulance.

Two police officers, Robert Childs and Stephen Begley, responded to the call. They were able to talk to Howard briefly at the convenience store before he began to receive medical attention. They testified that Howard told the officers that defendant had stabbed him at the boarding house. Officers Childs and Begley, along with Officer Reeves, who did not testify, went to the boarding house. They found defendant in an obvious state of intoxication. Defendant initially denied that an altercation or stabbing had occurred at the boarding house, but then acknowledged that he had an argument with one of his roommates because the roommate wanted some of his rent money back. Defendant gave the officers permission to search his room for a knife, and then showed the officers a small pocketknife which he had on his person. Officer Begley then found a large pocketknife with blood and flesh on it on defendant's bed. After the discovery of the knife, defendant told the officers that Howard had confronted him with a pipe bender and he had pulled out the knife and swung it at Howard to get him to back off. The officers searched the residence and surrounding area for a pipe bender or pipe but did not locate either.

STATE v. GOODWIN

[186 N.C. App. 638 (2007)]

On 7 March 2005, the Mecklenburg County Grand Jury indicted defendant for AWDWISI. Defendant was tried before a jury in Superior Court, Mecklenburg County on 1 June 2006. The jury found defendant guilty of AWDWISI. Upon the jury verdict, the trial court sentenced defendant to 30 to 45 months, within the presumptive range, based on a prior record level III. Defendant appeals.

## II. Rule 404(b)

Defendant argues that the trial court erred in allowing the State to cross-examine him about two prior incidents which resulted in criminal charges that the State voluntarily dismissed. The testimony assigned as error was elicited beginning with the State's cross-examination of defendant as follows:

Q: Do you recall an incident [on 13 July 1997] where you stabbed a man multiple times and told police that he had threatened you?

[Defendant objected and was overruled.]

A: I didn't stab him multiple times; I cut the guy twice.

. . . .

Q: Do you recall where you cut him?

A: I cut him on the arm . . . and in the chest.

. . . .

Q: You did that because you said he had threatened you, right?

A: Yes; he did.

. . . .

Q: And do you recall on [20 August 2001] that you hit a man in the head with [a] baseball bat because you said he had threatened you?

[Defendant objected and was overruled.]

A: I hit the man one time with a baseball bat.

[The defense begins re-direct examination of defendant.]

Q: Isn't it true that [those two charges] were dismissed . . . and you never even had to come to court for them?

. . . .

A: [Correct.]

[The State begins re-cross examination of defendant.]

Q: You don't know why [those two charges] were dismissed though, do you?

[Defendant objected and was overruled.]

A: They were dismissed, I don't know why.

Defendant argues that admission of this testimony was error because its sole purpose was to show defendant's propensity to commit crimes similar to the one charged, in violation of N.C. Gen. Stat. 8C-1, § Rule 404(b).[2] He argues that the erroneous admission of this testimony prejudiced him, because the only witnesses to the alleged crime were defendant and the victim, Howard, and the case therefore turned on defendant's credibility.

The State contends that the purpose of the evidence was not to prove defendant's character or his propensity to commit the type of crime for which he was charged, but to show that defendant had the mistaken belief that he could claim self-defense, since he had also "mistakenly" claimed self-defense in 1997 and 2001.

We reject the State's argument. This case is analogous to *State v. Morgan*, 315 N.C. 626, 340 S.E.2d 84 (1986). In *Morgan*, the defendant shot the victim with a shotgun at the defendant's place of business. *Id.* at 628-29, 340 S.E.2d at 86. As a result, the defendant was charged with first-degree murder. *Id.* at 627, 340 S.E.2d at 86. The defendant testified that he was acting in self-defense. *Id.* at 631, 340 S.E.2d at 88. The State then cross-examined the defendant regarding his pointing a shotgun at a man at the defendant's place of business about three months prior to the alleged murder of the victim. *Id.* The State's argument in *Morgan* was essentially the same as in this case:

The State here contends that the evidence brought out during defendant's cross-examination was admissible under Rule 404(b) because it was relevant to the issue of whether defendant was the aggressor in the altercation he described during direct examina-

---

2. N.C. Gen. Stat. § 8C-1, Rule 404(b) reads in pertinent part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

tion. Since defendant claimed he shot [the victim] in self-defense and since the aggressor in an affray cannot claim the benefit of self-defense unless he has abandoned the fight and has withdrawn by giving notice to his adversary, whether the defendant was the aggressor was a contested element of defendant's self-defense claim. The State asserts that this evidence, therefore, was relevant to show that defendant's pointing of the shotgun at the decedent and shooting him was not in self-defense.

*Morgan*, 315 N.C. at 637-38, 340 S.E.2d at 91-92 (internal citation and quotation omitted).

Rejecting the State's argument, the Supreme Court held that

[t]he State's rationale is precisely what is prohibited by Rule 404(b). In order to reach its conclusion, the State is arguing that, because defendant pointed a shotgun at Mr. Hill three months earlier, he has a propensity for violence and therefore he must have been the aggressor in the alleged altercation with [the victim] and, thus, could not have been acting in self-defense.

*Id.* at 638, 340 S.E.2d at 92.

In the case *sub judice,* the State has emphasized defendant's "mistaken" belief that he had any right to claim self-defense, apparently trying to fit the proffered evidence into the "absence of mistake" purpose as listed in Rule 404(b). We have been unable to determine how evidence that defendant was *mistaken* could possibly tend to prove an "*absence of* mistake." Even if the purpose of the evidence as the State proposes could be proper, the record also contains no indication that defendant was in fact mistaken regarding his belief that he had a right to claim self-defense in the 1997 and 2001 incidents—there is simply not sufficient information in the record regarding those incidents for anyone to make such a determination. All the jury could possibly draw from the evidence of the 1997 and 2001 incidents, as it was presented was defendant's propensity for violence. Thus, we are left with the admission of evidence which could only be considered as proof of defendant's violent disposition, and specifically his propensity to attack others on slight provocation and then to claim self-defense without justification. "The theory of relevancy articulated by the State on this appeal is plainly prohibited by the express terms of Rule 404(b) disallowing " '[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show that he acted in conformity therewith.' " 315 N.C. at 638, 340 S.E.2d at 92 (quoting N.C. Gen. Stat. § 8C-1, Rule 404(b)).

We must next consider whether the erroneous admission of evidence of the 1997 and 2001 incidents prejudiced defendant. "The test for prejudicial error is whether there is a reasonable possibility that, had the error not been committed, a different result would have been reached at trial." *State v. Scott*, 331 N.C. 39, 413 S.E.2d 787 (1992) (citing N.C. Gen. Stat. § 15A-1443(a)). We conclude that there is a reasonable possibility that the jury would have reached a different result if this evidence had not been admitted. In the case *sub judice*, there were no witnesses to the assault other than victim and the defendant. There was evidence attacking the credibility of both the victim and defendant, including impairment by drugs and/or alcohol at the time of the assault. There was no dispute that defendant stabbed the victim, so the physical evidence actually recovered by the police neither supports nor refutes defendant's claim of self-defense. It is true that the police did not find the pipe which defendant claimed that Howard wielded against him, but considering all of the evidence, we cannot conclude that the error was harmless. Evidence of not just one, but two, prior assaults by defendant, under similar circumstances, and his claims of self-defense which the State stressed as "mistaken" could certainly have had a significant effect upon the jury's assessment of defendant's credibility.

We therefore hold that the trial court erred in its admission of evidence of the 1997 and 2001 incidents pursuant to Rule 404(b), and that this error prejudiced defendant. We set aside defendant's conviction for AWDWISI, and remand for a new trial. Due to our ruling on this issue, we need not address defendant's assignment of error to his sentence.

New trial.

Judges McCULLOUGH and BRYANT concur.