STATE OF NORTH CAROLINA v. BONNIE LINDA FLAUGHER

No. COA10-1044

(Filed 16 August 2011)

## 1. Evidence—prior crimes or bad acts assault deadly weapon—absence of mistake—not unfairly prejudicial

The trial court did not commit plain error in an assault with a deadly weapon with intent to kill inflicting serious injury case by admitting evidence that defendant had previously assaulted the victim with a fork, injuring his hand. The evidence was properly admitted for the purpose of showing absence of accident or mistake and the probative value outweighed the danger of any unfair prejudice.

## 2. Robbery—dangerous weapon—sufficient evidence—motion to dismiss properly denied

The trial court did not err in a robbery with a dangerous weapon case by denying defendant's motion to dismiss the charge. There was substantial evidence of each essential element of the offense charged, and of defendant's being the perpetrator of such offense.

## 3. Crimes, Other—maiming without malice—sufficient evidence—motion to dismiss properly denied

The trial court did not err in a maiming without malice case by denying defendant's motion to dismiss the charge. There was substantial evidence of each of the elements of the offense, including that defendant intended to strike the victim's finger with the intent to disable him.

## 4. Jury—instructions—voluntary intoxication—insufficient evidence

The trial court did not err in a robbery with a dangerous weapon and assault with a deadly weapon with intent to kill inflicting serious injury case by refusing to instruct the jury on the issue of voluntary intoxication. Defendant did not produce sufficient evidence to show that at the time of the crimes, her mind was so completely intoxicated that she was utterly incapable of forming the necessary intent to commit the crimes.

**5. Assault—deadly weapon inflicting serious injury—lesser-included offense—misdemeanor assault with deadly weapon—jury instruction not warranted**

The trial court did not err in an assault with a deadly weapon inflicting serious injury case by refusing to instruct the jury on the lesser-included offense of misdemeanor assault with a deadly weapon. The evidence squarely showed serious injury and defendant did not address the intent to kill element.

**6. Robbery—dangerous weapon—lesser-included offense—common law robbery—jury instruction not warranted**

The trial court did not err in a robbery with a dangerous weapon case by refusing to charge the jury on common law robbery. The pickaxe used by defendant and the manner of its use were of such character as to admit but one conclusion—that it was a deadly weapon.

**7. Robbery—dangerous weapon—pickaxe—jury instruction—no plain error**

The trial court did not commit plain error in a robbery with a dangerous weapon case by instructing the jury that a pickaxe used by defendant was a deadly weapon. The pickaxe and the manner of its use were of such character as to admit but one conclusion—that it was a deadly weapon.

**8. Appeal and Error—preservation of issues—issue not raised at trial—dismissed**

Defendant's argument that the trial court violated her right to be free from double jeopardy when it sentenced her for both maiming without malice and assault with a deadly weapon inflicting serious injury was not preserved for appellate review where defendant failed to raise the issue at trial.

Appeal by defendant from judgment entered 22 April 2010 by Judge W. Allen Cobb, Jr. in New Hanover County Superior Court. Heard in the Court of Appeals 23 February 2011.

*Attorney General Roy Cooper, by Special Deputy Attorney General Daniel D. Addison, for the State.*

*William D. Spence for defendant-appellant.*

GEER, Judge.

STATE v. FLAUGHER

[214 N.C. App. 370 (2011)]

Defendant Bonnie Linda Flaugher appeals from convictions of assault with a deadly weapon with intent to kill inflicting serious injury ("AWDWIKISI"), robbery with a dangerous weapon, maiming without malice, and possession of a stolen motor vehicle. Defendant primarily argues that the trial court committed plain error in admitting evidence that defendant had previously assaulted the victim with a fork, injuring his hand. Defendant contends that because the district attorney voluntarily dismissed the charges when the victim denied that an assault occurred and because the evidence was not properly admitted under Rule 404(b), the trial court should have excluded the evidence.

The dismissal did not, however, amount to a judicial acquittal and, therefore, that dismissal did not preclude admission of the evidence. Further, evidence of the assault was relevant on the charge of maiming without malice based on the near severing of the victim's finger—it showed that defendant knew that if she continued to strike at defendant after he raised his hands, she could disfigure his hands or fingers. The evidence, therefore, would have permitted the jury to conclude that defendant did not accidentally disfigure the finger. Because we are not persuaded by defendant's remaining arguments, we hold that defendant received a trial free of prejudicial error.

## Facts

The State's evidence tended to show the following facts. In early 2008, Larry Eugene Perry allowed defendant to live at his house because she was homeless and he felt sorry for her. He also allowed another woman, Melanie Graham, to live at the house—she had a driver's license and drove Mr. Perry and his brother to do tree and yard work.

On 2 March 2008, when Mr. Perry returned home from work, defendant asked him for a ride into town. Mr. Perry refused, explaining that he was tired, his head hurt, and he was going to bed. According to Mr. Perry, defendant "started ranting and raving and cussing." She went outside, and Mr. Perry locked the front door behind her. After defendant threw a flower pot through a window, Mr. Perry unlocked the door because he did not want defendant to break any more windows. Mr. Perry then went into his bedroom, which he shared with defendant, and went to sleep.

Mr. Perry later awoke when defendant started hitting him over the head with a pickaxe,[1] saying " 'I'll kill you, you son of a bitch.' "

---

1. In the transcript, the tool is alternately referred to as a pickaxe, grubbing hoe, or mattock.

She swung and hit him at least eight times. Instinctively, Mr. Perry put his hands up to cover his head and face. When he did so, defendant slashed his right finger with the pickaxe, leaving the finger hanging on by only a piece of skin.

At some point, Mr. Perry may have taken the pickaxe from defendant, but Mr. Perry was not certain because he was, in his words, "in a daze." Defendant looked at him and said, " 'Give me your wallet, give me your money, motherfucker.' " Mr. Perry gave her a wallet. After defendant said, " 'No, the other one too,' " Mr. Perry gave her a second wallet as well. She took $114.00, leaving one wallet on the floor and one just outside the bedroom door on the washing machine.

Defendant went down the hall and came back, jingling Mr. Perry's truck keys in her hand and told Mr. Perry that she was taking his truck. By that point, Ms. Graham had also come in the room. Ms. Graham and defendant left together in Mr. Perry's truck, with Ms. Graham driving.

Mr. Perry made his way to a neighbor's house, and the neighbor called 911. Emergency responders transported Mr. Perry to the hospital, where he had 53 staples put in his head to close the lacerations. His finger was also reattached after a seven-and-a-half-hour surgery, but it is now crooked and he can no longer use it. Mr. Perry described his injuries as very painful and testified that he never used to have headaches, but now he has headaches "all the time" and suffers from memory loss.

On 19 May 2008, defendant was indicted for AWDWIKISI, robbery with a dangerous weapon, larceny of a motor vehicle, maiming without malice, and possession of a stolen motor vehicle. Following the close of the State's evidence at trial, the trial court granted defendant's motion to dismiss the charge of larceny of a motor vehicle.

At trial, defendant testified on her own behalf. According to defendant, about three days before the attack, when Mr. Perry and Ms. Graham were out of town, she had placed the pickaxe in the bedroom because she heard dogs barking "like something or somebody was out there," and she was scared. She testified that on the day of the attack, she—and not Mr. Perry—went into the bedroom to lie down. She woke up to find her pants unbuttoned and unzipped and Mr. Perry's hand down her pants. Mr. Perry was only wearing underwear, and she thought he was going to rape her. She grabbed what she "thought was a bat, [she didn't] know what it was," and began swinging, trying to get Mr. Perry off her, although she testified that she was

not trying to kill him. After Ms. Graham came in and pulled Mr. Perry off defendant, the two women ran out and drove away in Mr. Perry's truck. Defendant testified that she never demanded Mr. Perry's wallets or keys.

The jury found defendant guilty of AWDWIKISI, robbery with a dangerous weapon, maiming without malice, and possession of a stolen motor vehicle. The trial court consolidated the convictions for sentencing and imposed one presumptive-range term of 100 to 129 months imprisonment. Defendant timely appealed to this Court.

I

[1] We first consider defendant's argument that the trial court erred, in violation of Rule 404(b) of the Rules of Evidence, in admitting testimony by Mr. Perry and Detective David Dombroski regarding a previous assault by defendant on Mr. Perry. Mr. Perry testified that on 4 January 2008, he cooked some steaks for himself and defendant. After he ate his steak, defendant, who had been drinking, "went into a rage" for no reason and said, " 'I'm going to beat you, I'm going to whip you, your brother's not here to defend you, I'm going to whip you.' " She jumped on him and tore his shirt off. Mr. Perry grabbed her and said, " 'What is wrong with you? What is wrong with you? Settle down, calm down.' "

Mr. Perry then let defendant go, at which point she grabbed a fork and ran at him to stick him in the chest. He grabbed her arms, and this time, when he did, the fork "got [him] in the finger," causing it to bleed. He believed that if he had not grabbed her with his hands, he would have been stuck in the chest with the fork. Mr. Perry then "threw her on the floor and held her."

After Mr. Perry let defendant go, defendant went outside and called the police. When the police arrived, they arrested defendant even though Mr. Perry told them he did not want her to be arrested. Defendant was charged with assault with a deadly weapon.

Detective Dombroski had responded to the 4 January 2008 incident at Mr. Perry's home. According to Detective Dombroski, Mr. Perry told him that he and defendant had been arguing over Mr. Perry's asking defendant to leave the house because she was intoxicated. Defendant had picked up a fork and come at Mr. Perry, who put his hand in front of his face, at which point she "punctured" his hand with the fork. Detective Dombroski was unable to obtain much information from defendant about the incident, other than that she was upset because Mr. Perry had locked her out.

STATE v. FLAUGHER

[214 N.C. App. 370 (2011)]

At trial, outside the presence of the jury, defendant objected to this evidence before its admission on the ground that its sole purpose was to show propensity toward violence. Following a *voir dire* examination of Mr. Perry, the trial court allowed the evidence and instructed the jurors that they should consider it only for the purpose of showing absence of accident or mistake.

Defendant failed to object to the introduction of this evidence when it was actually admitted, but she contends that the issue was nonetheless preserved for review under *State v. Herrera,* 195 N.C. App. 181, 196-97, 672 S.E.2d 71, 81, *disc. review denied,* 363 N.C. 377 (2009), in which this Court held the following:

> [W]e do not believe that under the circumstances here, N.C.R. App. P. 10(b)(1) or North Carolina case law mandate that defendant had to re-object to this testimony in the jury's presence to preserve this issue when the court had already considered and overruled defendant's discovery violation objection during *voir dire.*
>
> . . . [D]efendant's objection was argued at trial, (albeit outside of the presence of the jury), and not pretrial. Because defendant raised his objections . . . at trial and obtained a ruling and standing objection on this issue, we believe he sufficiently preserved this issue for appellate review.

Subsequent to *Herrera,* however, our Supreme Court decided *State v. Ray,* 364 N.C. 272, 697 S.E.2d 319 (2010). In *Ray,* the State had already begun cross-examining the defendant when, outside the presence of the jury, it informed the trial court that it wanted to question the defendant regarding a prior assault for the purpose of proving motive and intent pursuant to Rule 404(b). *Id.* at 275, 697 S.E.2d at 321. The defendant objected at that time, outside the presence of the jury, but his counsel later failed to object when the evidence was introduced to the jury. *Id.* at 276, 697 S.E.2d at 321-22.

The Supreme Court in *Ray* held that "to preserve for appellate review a trial court's decision to admit testimony, 'objections to [that] testimony must be contemporaneous with the time such testimony is offered into evidence' and not made only during a hearing out of the jury's presence prior to the actual introduction of the testimony." *Id.* at 277, 697 S.E.2d at 322 (quoting *State v. Thibodeaux,* 352 N.C. 570, 581-82, 532 S.E.2d 797, 806 (2000), *cert. denied,* 531 U.S. 1155, 148 L. Ed. 2d 976, 121 S. Ct. 1106 (2001)). Consequently, the defendant had failed to preserve for appellate review the trial court's decision to admit evidence regarding the prior assault. *Id.*

Under *Ray*, therefore, defendant failed to preserve for appellate review her Rule 404(b) objection. Defendant, however, alternatively asks that we review for plain error. The plain error rule

> "is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the . . . mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513, 103 S. Ct. 381 (1982)). The first question in this analysis is whether the trial court committed any error at all.

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." This Court has described Rule 404(b) as a "general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990).

Here, the trial court properly admitted the fork evidence for the purpose of showing absence of accident or mistake. Defendant has contended, in connection with the charge of maiming without malice, that she never intended to purposefully strike Mr. Perry's finger with the pickaxe. Yet, defendant knew from the fork incident that she could end up stabbing Mr. Perry's hand or fingers if she swung at him with a weapon and he attempted to defend himself. The evidence was thus relevant to the question whether defendant intended to disable Mr. Perry or whether, as defendant argues, she accidentally struck his finger and did not intend to maim it. *See State v. Anderson*, 350 N.C.

152, 174, 513 S.E.2d 296, 310 (holding evidence that defendant previously punished her children through use of belt and biting was admitted for permissible purpose because it tended to establish, *inter alia,* absence of accident), *cert. denied,* 528 U.S. 973, 145 L. Ed. 2d 326, 120 S. Ct. 417 (1999).

Defendant also argues, however, that this evidence should have been excluded because the assault charge arising out of the fork incident had already been dismissed by the district attorney's office at the request of Mr. Perry. At some point, after the fork incident, Mr. Perry informed the district attorney's office that he did not want to press charges. Mr. Perry also completed a victim impact statement for the district attorney's office. On that form, he wrote: "Bonnie did not assault me. I will explain this matter to you if you will call me. Bonnie does have an alcohol problem. I grabbed her wrist and got stuck on my little finger. I will explain." Mr. Perry testified at trial in this case, however, that defendant in fact did attack him. He explained that he denied the assault on the victim impact statement because he felt sorry for defendant and did not want her to go to jail.

In arguing that the dismissal and Mr. Perry's original denial of the assault required exclusion of evidence of the assault, defendant relies on *State v. Scott,* 331 N.C. 39, 413 S.E.2d 787 (1992), and *State v. Fluker,* 139 N.C. App. 768, 535 S.E.2d 68 (2000). In each of these cases, however, this Court held that evidence that a defendant committed a prior offense for which he has been *tried and acquitted* may not be admitted in a subsequent trial for a different offense when its probative value depends upon the proposition that the defendant in fact committed the prior crime. *Scott,* 331 N.C. at 42, 413 S.E.2d at 788 ("We conclude that evidence that defendant committed a prior alleged offense for which he has been tried and acquitted may not be admitted in a subsequent trial for a different offense when its probative value depends, as it did here, upon the proposition that defendant in fact committed the prior crime."); *Fluker,* 139 N.C. App. at 774, 535 S.E.2d at 72 (accord).

Here, defendant was never tried and acquitted of the fork assault. Although defendant argues that the holdings of *Scott* and *Fluker* should apply to dismissals by the prosecution as well as to acquittal, a dismissal does not fall within the reasoning of those two cases. The holdings hinged on the fact that the defendant in each case had been judicially acquitted and, therefore, was legally innocent of the prior charges. *Scott,* 331 N.C. at 43-44, 413 S.E.2d at 789; *Fluker,* 139 N.C.

App. at 774-75, 535 S.E.2d at 72-73. The district attorney's dismissal, even considering Mr. Perry's victim impact statement, did not result in defendant's being legally innocent of the prior assault charge.

In *State v. Goodwin*, 186 N.C. App. 638, 641, 652 S.E.2d 36, 38 (2007), the only other case cited by defendant, the trial court admitted testimony about two prior incidents which resulted in criminal charges that the State voluntarily dismissed. This Court held that the testimony was admitted in error because its sole purpose was to show the defendant's propensity to commit crimes similar to the one charged. *Id.* at 642, 652 S.E.2d at 39. The Court's holding was in no way based on the fact that the charges related to the prior incidents had been dismissed.

We, therefore, hold that the trial court did not err in admitting the evidence of defendant's prior assault on Mr. Perry. Defendant, however, further argues that the trial court should have excluded the evidence under Rule 403 of the Rules of Evidence. Under Rule 403, evidence otherwise admissible may nonetheless be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." " 'The exclusion of evidence under the Rule 403 balancing test lies within the trial court's sound discretion and will only be disturbed where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.' " *State v. Register*, ___ N.C. App. ___, ___, 698 S.E.2d 464, 473 (2010) (quoting *State v. Jacobs*, 363 N.C. 815, 823, 689 S.E.2d 859, 864 (2010)).

Defendant's theory of the case was that she never intended to strike Mr. Perry's finger. We cannot conclude that the trial court unreasonably determined that the probative value of the evidence of the fork assault to the charge of maiming—showing that defendant knew that stabbing at Mr. Perry's face could result in injury to his hand—outweighed any *unfair* prejudice that might stem from the jury's learning that defendant had previously attacked Mr. Perry with a fork.

II

**[2]** Defendant next contends that the trial court erred in denying her motion to dismiss the charge of robbery with a dangerous weapon. We review a trial court's denial of a motion to dismiss de novo to determine "whether there is substantial evidence (1) of each essential

element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). Substantial evidence is "evidence that a reasonable mind might find adequate to support a conclusion." *State v. Hargrave*, 198 N.C. App. 579, 588, 680 S.E.2d 254, 261 (2009).

The trial court must review the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from the evidence. *State v. Squires*, 357 N.C. 529, 535, 591 S.E.2d 837, 841 (2003), *cert. denied*, 541 U.S. 1088, 159 L. Ed. 2d 252, 124 S. Ct. 2818 (2004). Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve. *State v. Prush*, 185 N.C. App. 472, 478, 648 S.E.2d 556, 560 (2007).

The essential elements of robbery with a dangerous weapon are: (1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of a person is endangered or threatened. *State v. Haselden*, 357 N.C. 1, 17, 577 S.E.2d 594, 605, *cert. denied*, 540 U.S. 988, 157 L. Ed. 2d 382, 124 S. Ct. 475 (2003). *See also* N.C. Gen. Stat. § 14-87(a) (2009). Defendant contends that the evidence in this case showed that "defendant's assault on Mr. Perry was not made to induce him to part with his money[;] rather the State's evidence shows her demand for money to be an afterthought." We disagree.

Our Supreme Court has repeatedly explained that "when the circumstances of the alleged armed robbery reveal defendant intended to permanently deprive the owner of his property and the taking was effectuated by the use of a dangerous weapon, it makes no difference whether the intent to steal was formulated before the use of force or after it, so long as the theft and the use or threat of force can be perceived by the jury as constituting a single transaction." *State v. Fields*, 315 N.C. 191, 203, 337 S.E.2d 518, 525 (1985). *See also State v. Green*, 321 N.C. 594, 605, 365 S.E.2d 587, 594 ("[P]rovided that the theft and the force are aspects of a single transaction, it is immaterial whether the intention to commit the theft was formed before or after force was used upon the victims."), *cert. denied*, 488 U.S. 900, 102 L. Ed. 2d 235, 109 S. Ct. 247 (1988).

In *Fields*, the defendant similarly argued that he only took the victim's shotgun "as an afterthought." 315 N.C. at 201, 337 S.E.2d at 524. The evidence in that case showed that the victim had gone over

to the home of his neighbors, whom he knew to be away, after he observed the defendant and his companions enter the neighbors' property. *Id.* at 193, 337 S.E.2d at 520. The victim confronted the men while holding a shotgun and ordered them to get against their truck with their hands up. *Id.* They complied, but when the victim looked away, the defendant pulled out a pistol and shot the victim five times. *Id.* The defendant then grabbed the victim's shotgun and fled. *Id.*

In rejecting the defendant's "belated intent argument," the Supreme Court reasoned that the defendant's intent to deprive the victim of his gun "appear[ed] to be so joined in time and circumstances with his use of force against [the victim] that these elements appear inseparable." *Id.* at 202, 337 S.E.2d at 525. Moreover, the Court emphasized, "mixed motives do not negate actions that point undeniably to a taking inconsistent with the owner's possessory rights." *Id.*

Here, the evidence viewed in the light most favorable to the State indicates that defendant's attack on Mr. Perry and the taking of his wallets constituted a single, continuous transaction. Defendant struck Mr. Perry multiple times with the pickaxe, after which she immediately took his wallets and money. As in *Fields*, defendant's intent to take the wallets was "so joined in time and circumstances with [her] use of force against [the victim] that these elements appear inseparable." *Id.* Thus, even if defendant's initial motive was to hurt or kill Mr. Perry, the fact that she at some point later developed the motive to rob him is immaterial.

Defendant's reliance on *State v. Richardson*, 308 N.C. 470, 302 S.E.2d 799 (1983), and *State v. Powell*, 299 N.C. 95, 261 S.E.2d 114 (1980), is misplaced. As our Supreme Court later explained in *State v. Hope*, 317 N.C. 302, 307, 345 S.E.2d 361, 364 (1986),

> the undisputed evidence in [*Richardson*] showed that as a result of an altercation between the victim and the defendant, the defendant struck the victim with a stick. The victim threw his duffle bag containing his wallet at the defendant solely in an effort to protect himself from further injury during their fight. The evidence conclusively showed that the defendant had no intent at that time to deprive the victim of his property and did not at that time "take" the property from him. It was only later after the victim had left the scene that the defendant went through the duffle bag and discovered the wallet. At that time, well after his use of a dangerous weapon, he first formed the intent to permanently deprive the owner of his property. We pointed out that a "defendant must

have intended to permanently deprive the owner of his property *at the time the taking occurred* to be guilty of the offense of robbery." [Richardson,] 308 N.C. at 474, 302 S.E. 2d at 802.

The Court in *Hope* emphasized that in *Richardson*, the Court had indicated that the use of the dangerous weapon by the defendant was "entirely separate from and unrelated to the taking of the victim's property by the defendant because the 'defendant's initial threats were not made to *induce* [the victim] to part with his property.' " *Id.* (quoting *Richardson*, 308 N.C. at 477, 302 S.E.2d at 803).

In *Powell*, 299 N.C. at 102, 261 S.E.2d at 119, the Supreme Court concluded that the evidence failed to show "one continuous chain of events" where the arrangement of the victim's body and the physical evidence indicated that she was murdered during a rape. Even viewing the evidence in the light most favorable to the State, the Court could only say that the evidence indicated that the defendant took the objects as an afterthought once the victim had died. *Id.*

In contrast to *Richardson* and *Powell*, the evidence in this case, viewed in the light most favorable to the State, showed a single, continuous chain of events. This argument is not a basis for reversing the trial court's denial of defendant's motion to dismiss.

Defendant, however, further argues that the State's evidence "was not positive" that the pickaxe was in defendant's possession at the time she demanded Mr. Perry's money. Mr. Perry, she points out, testified that he might have taken the pickaxe away from defendant, although he was not sure because he was in a daze.

In rejecting a similar argument, this Court stressed in *State v. Lilly*, 32 N.C. App. 467, 469, 232 S.E.2d 495, 496-97, *cert. denied*, 292 N.C. 643, 235 S.E.2d 64 (1977), that "[n]umerous decisions by this Court have concluded that the exact time relationship, in armed robbery cases, between the violence and the actual taking is unimportant as long as there is one continuing transaction amounting to armed robbery with the elements of violence and of taking so joined in time and circumstances as to be inseparable." The defendant in *Lilly* had argued, like defendant here, that he could not be convicted of robbery with a dangerous weapon since the assault with a crowbar was over by the time the defendant had any intent to rob.

This Court, in holding that the motion to dismiss was properly denied, relied on the fact that "the defendant held a dangerous weapon in his hand at the time he assaulted the victim; that he still

had the weapon hanging from his arm at the time he went into the kitchen to take food from the refrigerator; and that it was no longer necessary for him to use or threaten to use the weapon at the time of the robbery since he had already injured and subdued the victim." *Id.* at 470, 232 S.E.2d at 497. The Court then held that "[v]iewing this evidence in the light most favorable to the State, as we are required to do, we conclude that there was sufficient evidence to submit the charge of armed robbery to the jury and that the trial court properly denied the defendant's motion for nonsuit as to that charge." *Id.*

In light of *Lilly,* we hold that the trial court properly denied the motion to dismiss in this case since defendant held the pickaxe at the time she assaulted Mr. Perry and that she had already overcome and injured Mr. Perry when she demanded his wallets and took his money. The pickaxe had already served its purpose in subduing Mr. Perry at the time she robbed him. As he testified, he handed defendant his wallets because "[s]he was beating me—She had beaten me in the head and I was in a daze. I couldn't do anything but just stand there." *See also State v. Speight,* ___, N.C. App. ___, ___, ___ S.E.2d ___, ___, 2011 N.C. App. LEXIS 1224, *14-17, 2011 WL 2448519, *5-6 (21 June 2011) (rejecting defendant's reliance on *Richardson, Powell* and *State v. Dalton,* 122 N.C. App. 669, 471 S.E.2d 657 (1996) where defendant, after holding victim at knifepoint, cutting her hands and sexually assaulting her, took victim's personal property just before leaving); *State v. Reid,* 5 N.C. App. 424, 427, 168 S.E.2d 511, 513 (1969) (rejecting defendant's argument that at moment robbery actually occurred he did not use or threaten to use dangerous weapons because argument ignored evidence that transactions occurred as one continuous course of events, and that at moment robbery occurred weapons were unnecessary since victim had been subdued).

### III

**[3]** Defendant next argues that the trial court erred in denying her motion to dismiss the charge of maiming without malice. N.C. Gen. Stat. § 14-29 (2009) provides: "If any person shall, on purpose and unlawfully, but without malice aforethought, cut, or slit the nose, bite or cut off the nose, or a lip or an ear, or disable any limb or member of any other person, or castrate any other person, or cut off, maim or disfigure any of the privy members of any other person, with intent to kill, maim, disfigure, disable or render impotent such person, the person so offending shall be punished as a Class E felon." Defendant contends that the evidence failed to show that she intended to strike Mr. Perry's finger with the intent to disable him.

This Court has held, and defendant acknowledges, that the intent to maim or disfigure may be inferred from an act which does, in fact, disfigure the victim, unless the presumption is rebutted by evidence to the contrary. *State v. Beasley*, 3 N.C. App. 323, 330, 164 S.E.2d 742, 747 (1968). The near severing of Mr. Perry's finger triggered that presumption.

Defendant insists that the evidence rebutted the presumption, arguing that she was striking at Mr. Perry's head, not at his fingers, and it was Mr. Perry who, in his words, "put [his] hand up to stop the licks . . . to keep her from busting—killing [him]." The evidence showed, however, that defendant kept swinging even after Mr. Perry put his hands up to defend himself. There is no evidence to rebut the presumption that, while defendant was swinging at Mr. Perry's head *and* hands, she did not intend to maim or disfigure him. Moreover, she knew from the time she assaulted Mr. Perry with the fork that if he put his hands up and she kept swinging, she could easily injure his hand or fingers.

The evidence viewed in the light most favorable to the State shows that defendant could have stopped swinging, but instead she kept swinging knowing that she could strike his hand and fingers. In those moments, Mr. Perry's hands and fingers, along with his head, became the object of the assault. We, therefore, hold the trial court did not err in denying the motion to dismiss the maiming without malice charge.

## IV

**[4]** Defendant next argues that the trial court erred in refusing to instruct the jury on the issue of voluntary intoxication. " 'Before the trial court will be required to instruct on voluntary intoxication, defendant must produce substantial evidence which would support a conclusion by the trial court that at the time of the crime for which he is being tried defendant's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming [the requisite intent to commit the crime.] In the absence of some evidence of intoxication to such degree, the court is not required to charge the jury thereon.' " *State v. Keitt*, 153 N.C. App. 671, 676-77, 571 S.E.2d 35, 39 (2002) (quoting *State v. Kornegay*, 149 N.C. App. 390, 395, 562 S.E.2d 541, 545 (2002)). " 'When determining whether the evidence is sufficient to entitle a defendant to jury instructions on a defense or mitigating factor, courts must consider the evidence in the light most favorable to the defendant.' " *Id.* at 677,

571 S.E.2d at 39 (quoting *State v. Mash*, 323 N.C. 339, 348, 372 S.E.2d 532, 537 (1988)).

Our Supreme Court has emphasized that an instruction on voluntary intoxication is not required in every case in which a defendant claims that he committed a crime after consuming intoxicating beverages or controlled substances. *State v. Baldwin*, 330 N.C. 446, 462, 412 S.E.2d 31, 41 (1992). Evidence of "mere intoxication" is not enough to meet a defendant's burden of production. *Mash*, 323 N.C. at 346, 372 S.E.2d at 536.

In *Baldwin*, the Court held that evidence that the defendant drank " 'about five or six' beers and consumed an indeterminate amount of marijuana and cocaine at some time earlier in the day" was insufficient to show that the defendant was so intoxicated that he was incapable of forming the necessary intent. 330 N.C. at 463, 412 S.E.2d at 41. *See also Kornegay*, 149 N.C. App. at 395-96, 562 S.E.2d at 545 (evidence that defendant was " 'drunk and high from smoking [cocaine]' and that he was 'coming down' from the night before" was insufficient).

Here, Mr. Perry testified that he "had seen [defendant] coming off of crack cocaine before," and on the day in question, he "believe[d] you know . . . . [a]ll nervous and everything." He also said that she "seemed intoxicated" when she was upset about his refusing to drive her into town. According to Mr. Perry, defendant and Ms. Graham "claimed that they were taking a bunch of Xanax that day." Ms. Graham testified that defendant was drinking in the afternoon prior to the attack. Defendant herself testified that she had drunk "[t]wo big beers" and had taken a Xanax. When asked whether the two beers would make her intoxicated, she answered, "I could feel it, yeah. I wasn't drunk, falling down drunk or anything." She also denied having smoked crack.

This evidence shows that defendant had drunk two beers and "could feel it," had taken Xanax, and may have smoked crack cocaine. However, defendant herself said she was not drunk and had not smoked crack. *See Baldwin*, 330 N.C. at 463, 412 S.E.2d at 41 (in determining defendant did not produce sufficient evidence to support instruction on voluntary intoxication, noting that "[w]hen questioned concerning his state of intoxication at the time he entered the victim's home, defendant replied, 'I wasn't high. I was coming down off of it' "). Viewing the evidence in the light most favorable to defendant, we conclude that she did not produce sufficient evidence to show that at

the time of the crimes, her mind was so completely intoxicated that she was utterly incapable of forming the necessary intent to commit the crimes.

V

[5] Defendant next contends that the trial court erred in refusing to instruct the jury on the lesser included offense of misdemeanor assault with a deadly weapon. The trial court did instruct on the lesser included offense of felony assault inflicting serious injury, but the jury found defendant guilty of the greater offense. Defendant argues that she was also entitled to an instruction on misdemeanor assault with a deadly weapon because a jury could find that Mr. Perry's injuries were not serious.

"A defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *State v. Tillery*, 186 N.C. App. 447, 450, 651 S.E.2d 291, 294 (2007) (internal quotation marks omitted). " 'The trial court may refrain from submitting the lesser offense to the jury only where the evidence is clear and positive as to each element of the offense charged and no evidence supports a lesser included offense.' " *Id.* (quoting *State v. Lawrence*, 352 N.C. 1, 19, 530 S.E.2d 807, 819 (2000)). The determining factor is the presence of evidence to support a conviction of the lesser included offense. *Id.*

This Court has held that the only difference in what the State must prove for the offense of misdemeanor assault with a deadly weapon and felony assault with a deadly weapon with intent to kill is the element of intent to kill. *State v. Riley*, 159 N.C. App. 546, 553-54, 583 S.E.2d 379, 385 (2003). Thus, by extension, the difference between misdemeanor assault with a deadly weapon and AWDWIKISI is (1) intent to kill and (2) infliction of serious injury.

In *Riley*, this Court held that "[w]here all the evidence tends to show a shooting with a deadly weapon with the intent to kill, the trial court does not err in refusing to submit the lesser included offense of assault with a deadly weapon." *Id.* at 554, 583 S.E.2d at 385. Accordingly, here, if all the evidence tended to show an intent to kill and infliction of serious injury, the trial court did not err in refusing to submit the charge of assault with a deadly weapon.

Defendant contends that because reasonable minds could disagree as to the seriousness of Mr. Perry's injuries, the trial court erred

in declining to instruct on the lesser offense. As this Court has explained,

> [T]he serious injury element of [N.C. Gen. Stat.] § 14-32 means a physical or bodily injury. The courts of this [S]tate have declined to define serious injury for purposes of assault prosecutions other than stating that the term means physical or bodily injury resulting from an assault, and that further definition seems neither wise nor desirable. Whether a serious injury has been inflicted is a factual determination within the province of the jury. Among the factors that have been deemed relevant in determining whether serious injury has been inflicted are: (1) pain and suffering; (2) loss of blood; (3) hospitalization; and (4) time lost from work.

*State v. Walker*, ___ N.C. App. ___, ___, 694 S.E.2d 484, 494-95 (2010) (internal citations and quotation marks omitted).

Given the evidence of Mr. Perry's severe pain, the blood in the house, the 53 staples used to close the lacerations to his head, the severed finger, the near severing of his finger, and the loss of the use of his finger, we conclude that all of the evidence clearly and positively tended to show a serious injury. Furthermore, defendant makes no argument in her brief regarding whether all the evidence clearly and positively had a tendency to support the element of intent to kill. Because the evidence squarely showed serious injury and defendant does not address the intent to kill element, we hold that the trial court did not err in declining to instruct on misdemeanor assault with a deadly weapon.

## VI

**[6]** Defendant also argues that the trial court erred in refusing to charge the jury on common law robbery, a lesser included offense of robbery with a dangerous weapon. Common law robbery is "the felonious taking of money or goods of any value from the person of another or in his presence against his will, by violence or putting him in fear." *State v. McNeely*, 244 N.C. 737, 741, 94 S.E.2d 853, 856 (1956).

The difference between common law robbery and robbery with a dangerous weapon is the use of a dangerous weapon in the commission of the robbery. *State v. Ryder*, 196 N.C. App. 56, 65, 674 S.E.2d 805, 811 (2009). Where all the evidence supports the instruction on robbery with a dangerous weapon, and there is no evidence that the defendant engaged in an offense tantamount to common law robbery, an instruction on common law robbery is not required. *State v. Martin*, 29 N.C. App. 17, 19, 222 S.E.2d 718, 720 (1976).

Defendant contends that a reasonable juror could have found that the pickaxe was not used to commit the robbery. However, as noted above, the evidence clearly and positively showed one continuous transaction, and it showed that the pickaxe was used to accomplish the taking of the property regardless whether the taking was defendant's original intent. Thus, we hold the trial court did not err in declining to give the common law robbery instruction.

## VII

**[7]** Defendant further contends that the trial court committed plain error in instructing the jury that a pickaxe is a deadly weapon. A dangerous or deadly weapon is generally defined as any article, instrument or substance which is likely to produce death or great bodily harm. *State v. Torain*, 316 N.C. 111, 120, 340 S.E.2d 465, 470, *cert. denied*, 479 U.S. 836, 93 L. Ed. 2d 77, 107 S. Ct. 133 (1986).

"It has long been the law of this state that '[w]here the alleged deadly weapon and the manner of its use are of such character as to admit of but one conclusion, the question as to whether or not it is deadly . . . is one of law, and the Court must take the responsibility of so declaring.' " *Id.* at 119, 340 S.E.2d at 470 (emphasis omitted) (quoting *State v. Smith*, 187 N.C. 469, 470, 121 S.E. 737, 737 (1924)). "Only 'where the instrument, according to the manner of its use or the part of the body at which the blow is aimed, may or may not be likely to produce such results, its allegedly deadly character is one of fact to be determined by the jury.' " *Id.* at 120, 340 S.E.2d at 470 (quoting *State v. Joyner*, 295 N.C. 55, 64-65, 243 S.E.2d 367, 373 (1978)).

"There is no 'mechanical definition' for 'the distinction between a weapon which is deadly or dangerous per se and one which may or may not be deadly or dangerous depending upon the circumstances.' " *State v. Morgan*, 156 N.C. App. 523, 530, 577 S.E.2d 380, 386 (quoting *Torain*, 316 N.C. at 121, 340 S.E.2d at 471), *disc. review denied*, 357 N.C. 254, 583 S.E.2d 43 (2003). " '[T]he evidence in each case determines whether a certain kind of [weapon] is properly characterized as a lethal device as a matter of law or whether its nature and manner of use merely raises a factual issue about its potential for producing death.' " *Id.* (quoting *Torain*, 316 N.C. at 121, 340 S.E.2d at 471).

In *Morgan*, the defendant approached one of the victims, Marshall, "from his 'blind side' " and struck him hard enough on the head with a wine bottle that it broke upon impact. *Id.* The blows caused cuts to Marshall's head requiring staples and stitches to close the wounds. *Id.* The defendant continued to strike both Marshall and

another victim, Morgan, with the broken bottle, cutting both in the head and face and Morgan on his arms, legs, and back. *Id.* Ultimately, the Court held that "the evidence amply supported the trial court's instruction that a broken wine bottle is a dangerous and deadly weapon as a matter of law because, 'in the circumstances of its use by defendant here, it was likely to produce death or great bodily harm.' " *Id.* (quoting *Torain*, 316 N.C. at 121-22, 340 S.E.2d at 471).

The facts of this case are similar to those of *Morgan*. Here, the evidence showed the pickaxe handle was about three feet long, and the pickaxe weighed nine or 10 pounds. Defendant swung the pickaxe approximately eight times, causing cuts to Mr. Perry's head that required 53 staples. She also slashed his middle finger, leaving it hanging only by a piece of skin. In view of these facts, we conclude that the pickaxe and the manner of its use were " 'of such character as to admit of but one conclusion' "—that it was a deadly weapon— and the trial court did not err in so instructing the jury. *Torain*, 316 N.C. at 119, 340 S.E.2d at 470 (quoting *Smith*, 187 N.C. at 470, 121 S.E at 737).

VIII

[8] Lastly, defendant argues that the trial court violated her right to be free from double jeopardy when it sentenced her for both maiming without malice and AWDWIKISI because, she claims, this amounted to multiple punishments for the same offense. Defendant admits that she did not raise this issue at trial but relies on *State v. Hargett*, 157 N.C. App. 90, 577 S.E.2d 703 (2003), for the proposition that this issue is nonetheless preserved for review. In *Hargett*, this Court held that the defendant was not required to have raised the double jeopardy issue below since it was a sentencing error. *Id.* at 92, 577 S.E.2d at 705.

*Hargett*, however, is inconsistent with numerous Supreme Court cases holding that a double jeopardy argument cannot be raised for the first time on appeal. *See, e.g., State v. Davis*, 364 N.C. 297, 301, 698 S.E.2d 65, 67 (2010) ("To the extent defendant relies on constitutional double jeopardy principles, we agree that his argument is not preserved because [c]onstitutional questions not raised and passed on by the trial court will not ordinarily be considered on appeal." (internal quotation marks omitted)); *State v. Madric*, 328 N.C. 223, 231, 400 S.E.2d 31, 36 (1991) ("The defendant candidly concedes . . . that he did not raise any double jeopardy issue at trial. Therefore, this issue has been waived."). Because we are bound to follow the Supreme Court, we hold that defendant's argument is not preserved.

Furthermore, although defendant asks us to exercise Rule 2, we decline in our discretion to do so.

No error.

Judges BRYANT and ELMORE concur.